[No. 22776-9-I.   Division One.   August 21, 1989.]

DIANE K. GJERDE, ET AL, *Appellants,* v. ULRICH FRITZSCHE, *Respondent.*

388

*Paul W. Chemnick, Patricia K. Greenstreet,* and *Chemnick, Moen & Greenstreet,* for appellants.

*Lee M. Barnes* and *Houger, Miller & Stein,* for respondent.

FORREST, J.—Diane K. Gjerde and Marvin Gjerde appeal from the judgment in favor of defendant Ulrich Fritzsche on their complaint alleging malpractice in Fritzsche's gynecological care of Diane Gjerde. We affirm.

On May 14, 1984, Gjerde saw Fritzsche because of a 2–month history of vaginal bleeding. Fritzsche diagnosed IUD side effects, removed Gjerde's IUD, and prescribed Tetracycline. Gjerde returned for a follow–up visit on May 23. Her bleeding had stopped and her pelvic examination was negative. After a discussion of contraceptive alternatives, Fritzsche performed a vaginal tubal ligation on Gjerde at Swedish Hospital on June 1.

Gjerde saw Fritzsche in his office on June 7, complaining of lower back and abdominal pain and bloating. Her pelvic examination revealed cervical and uterine tenderness. Fritzsche intended to prescribe 7 days of Vibra–Tabs taken twice per day, but due to an error in his office, seven tablets of Vibra–Tabs were prescribed, enough for only 4 days. On June 11, Gjerde visited Fritzsche again and reported that she was feeling much better. Her pelvic examination was

negative, and no further medication or follow–up visits were prescribed.

In mid–August, Gjerde began experiencing lower back pain, cramping and bloating. On September 4, she visited Fritzsche in his office, reporting the above complaints plus a vaginal discharge. Fritzsche performed a pelvic examination, diagnosed a yeast infection, and attributed Gjerde's other symptoms to possible colitis.

After an increase in the severity of symptoms, Gjerde visited her family practitioner on September 17, who admitted her to Swedish Hospital. A pelvic ultrasound revealed a 10–centimeter pelvic mass, consistent with an abscess from pelvic inflammatory disease. Intravenous antibiotics were prescribed, but on September 23, Gjerde underwent a complete hysterectomy.

Gjerde brought an action against Fritzsche in 1985. At trial, Gjerde presented evidence from three medical experts, who opined that Fritzsche had violated the standard of care of a reasonably prudent gynecologist by performing a vaginal tubal ligation so soon after removal of a symptomatic IUD, by prescribing only seven Vibra–Tabs after suspecting the presence of pelvic inflammatory disease, and by failing to inform Gjerde of the possible symptoms of recurrent pelvic infection. They further opined that Gjerde's abscess was the result of pelvic inflammatory disease from which Gjerde suffered on June 7, 1984.

Fritzsche and a defense expert testified that Gjerde's symptoms were not sufficiently clear to diagnose pelvic inflammatory disease until after September 4, 1984. They also opined that the development of the abscess was a phenomenon occurring in September and was not related to the tubal ligation or Fritzsche's prior treatment.

The court gave the following instruction 18:

> A physician or surgeon is not to be judged in light of any after–acquired knowledge in relation to the case, and the question of whether or not he exercised reasonable care and skill, as defined in these instructions, is to be determined by reference to what is known in relation to the case at the time of treatment or examination, and must be determined by reference to

the pertinent facts then in existence of which he knew, or in the exercise of reasonable care, should have known.

Gjerde objected to this form of the instruction, and proposed a modification that deleted the first phrase. The court rejected the modification and gave the instruction as prepared.

After commencing deliberations, the jury sent the following inquiry:

Under what circumstances does the issue of contributory negligence on the part of D. Gjerde apply such that a jury response is necessary?

The judge responded that the answer was in the instructions and that they should reread them carefully.

The jury returned its verdict on the special jury interrogatory form.[1] The jury found against plaintiffs on their claim for negligence and for lack of informed consent. The form did not tell the jury to stop at that point, as it should have done. The jury continued to answer finding for the defendant on contributory negligence. The final jury interrogatory and answer, material to this appeal, was:

If the answer to the above [question of Gjerde's contributory negligence] is yes, using 100% as the total combined negligence of the parties which contributed to the injury or damage to plaintiff Diane Gjerde, what percentage of such negligence is attributable to plaintiff Diane Gjerde?
Answer:   45%

The verdict was received without the court or either counsel responding to the obvious inconsistency by inquiry to the jury or by stipulation.

Gjerde moved for a judgment notwithstanding the verdict or a new trial, asserting that instruction 18 was an incorrect statement of the law. She presented declarations from two jurors, who stated that the jury had not used any of the experts' testimony because it was "hindsight information" and that the instruction precluded consideration of that testimony. Gjerde also contended that the special jury interrogatories were inconsistent and required a new trial.

---

[1]The verdict form is appended.

The motions were denied, and judgment in favor of Fritzsche was entered on the verdict.

## INSTRUCTION 18

Gjerde argues that the first phrase of instruction 18, "A physician or surgeon is not to be judged in light of any after–acquired knowledge in relation to the case," was a misstatement of the law and was prejudicial. She cites no authority for the proposition that the phrase misstates the law, but argues that the language of the instruction allowed the jury to believe that it could not consider any "hindsight" or after–acquired knowledge in determining whether Fritzsche's conduct was the legal cause of her injuries.

Instruction 18 is identical to the instruction approved in *Vasquez v. Markin*.[2] The *Vasquez* court held that "[i]n Washington negligence is not a matter to be judged after the occurrence; thus, '"[f]oresight, not retrospect, is the standard of diligence.'" *Vasquez v. Markin*.[3] Gjerde seeks to distinguish *Vasquez* on the basis that it discussed negligence, while the issue in her case is the use of after–acquired knowledge to prove the causation link between Fritzsche's conduct and the damages she suffered.

While the instruction is a correct statement of the law, based on *Vasquez*, the use of the negative in the phrase "not to be judged in light of any after–acquired knowledge in relation to the case" creates an unnecessary risk of misapplication. If the jury had been affirmatively instructed that Fritzsche was to be judged on what he knew or should have known at the time of diagnosis and treatment, then there would have been no possible risk for confusion as to the use of after–acquired knowledge linking Fritzsche's actions with the injuries and damages suffered by Gjerde. Although instruction 18 was not as clear as it could have

[2] 46 Wn. App. 480, 487–89, 731 P.2d 510 (1986), *review denied*, 108 Wn.2d 1021 (1987).

[3] 46 Wn. App. at 489, quoting *Winsor v. Smart's Auto Freight Co.*, 25 Wn.2d 383, 387, 171 P.2d 251 (1946), and *Peterson v. Betts*, 24 Wn.2d 376, 388, 165 P.2d 95 (1946).

been, we conclude it did not confuse the jury and was not error to give it.

█ Gjerde contends that the jurors' declarations should be considered in evaluating the effect of the instruction. The claim is that the declarations do not inhere in the verdict because they only show that "the jury felt precluded, as a result of Instruction No. 18, from considering evidence of medical facts which came to light after Dr. Fritzsche's last treatment of the plaintiff . . . .",[4] relying on *Chapman v. State*.[5] The jurors' declarations inhere in the verdict, because they describe what the jury understood about the instruction. The mental processes of the jury cannot be rebutted or impeached by later evidence. *Rasor v. Retail Credit Co.*;[6] *Cox v. Charles Wright Academy, Inc.*[7] The declarations may not be considered in evaluating whether instruction 18 was erroneously given. *Chapman* is inapposite. The affidavits in that case did not describe the jury's understanding of the instructions, but rather stated that had they known that the jury could have requested clarifying instructions, they would have waited for those clarifying instructions before concurring in the verdict. The court did not err in giving instruction 18.

## JURY INTERROGATORIES

Gjerde argues that the special jury interrogatories were irreconcilably contradictory because after having found against her and for Fritzsche on all matters, the jury only attributed her with 45 percent of the combined negligence. She contends that the remaining 55 percent of the negligence could be attributed only to Fritzsche, thereby creating an irreconcilable contradiction with the jury's finding against her and for Fritzsche.

---

[4]Reply Brief, at 9–10.

[5]6 Wn. App. 316, 326, 492 P.2d 607 (1972).

[6]87 Wn.2d 516, 532, 554 P.2d 1041 (1976).

[7]70 Wn.2d 173, 179–80, 422 P.2d 515 (1967).

■ We decline to consider this challenge to the jury interrogatories, because Gjerde waived the issue below by failing to bring the inconsistency in the answers to the interrogatories to the attention of the court at the time the jury was polled. In response to this court's questions at oral argument, Gjerde's counsel gave the following answers:

> QUESTION: Now let me ask you one more question. I understand that the jury was polled, how if the judge and you and defense counsel were there and polled the jury did nobody notice the, what you now think is a fatal inconsistency in the verdict form?
>
> ANSWER: Okay, to be honest, I certainly did recognize that there was an inconsistency in the verdict form. My position is that the responsibility to preserve a verdict is on the party that wishes to enforce it. I was not happy with the 45 percent contributory negligence issue. The judge did not ask for a reconciliation of the inconsistencies, the party wishing to enforce the judgment did not ask for a reconciliation.
>
> . . . .
>
> QUESTION: Why didn't somebody say, your Honor send the jury back, tell them that their answers were inconsistent?
>
> ANSWER: That's what should have been done. That was not done.

CR 49(b) provides in relevant part:

> When the answers [to the jury interrogatories] are inconsistent with each other and one or more is likewise inconsistent with the general verdict, judgment shall not be entered, but the court shall return the jury for further consideration of its answers and verdict or shall order a new trial.

No Washington cases have decided whether the failure to object to inconsistencies in jury interrogatories constitutes a waiver. The majority of federal courts analyzing the identical provision of Fed. R. Civ. P. 49(b) have held that the failure to object to inconsistencies in the verdict before the discharge of the jury waives any objection on appeal. *Strauss v. Stratojac Corp.;*[8] *Diamond Shamrock Corp. v. Zinke & Trumbo, Ltd.;*[9] *Skillin v. Kimball;*[10] *Stancill v.*

---

[8]810 F.2d 679, 683 (7th Cir. 1987).

[9]791 F.2d 1416, 1422–23 (10th Cir.), *cert. denied,* 479 U.S. 1007, 93 L. Ed. 2d 702, 107 S. Ct. 647 (1986).

[10]643 F.2d 19, 19–20 (1st Cir. 1981).

*McKenzie Tank Lines, Inc.*[11] While these cases involve both inconsistencies among the jury interrogatories and inconsistencies between the special and general verdicts, we conclude that the absence of a general verdict makes no difference. We agree with the reasoning of the federal Court of Appeals in *Strauss v. Stratojac Corp., supra* at 683:

> [W]hen the jury returned its verdict, the magistrate permitted counsel to examine the replies to the interrogatories. If counsel who had submitted the questions saw no inconsistency and raised no objection to the discharge of the jury, we can, at least under the circumstances of this case, see no reason why he should be permitted to try his luck with a second jury. Proper respect for the jury verdict and for the court's responsibility to manage its caseload fairly and expeditiously militate against such a course.

In this case, Gjerde's counsel recognized the inconsistency in the jury interrogatories and yet remained silent, seeking to "try his luck with a second jury." Such silence in the face of actual knowledge of an inconsistency at a time it could be cured waives the issue on appeal. The situation is analogous to the failure to object to evidence or a jury instruction, which waives the issue for appeal. *In re Penelope B.*,[12] *State v. Ng.*[13] Accordingly, we decline to review the issue.

Affirmed.

GROSSE, A.C.J., and SWANSON, J., concur.

Reconsideration denied September 26, 1989.

Review denied at 113 Wn.2d 1038 (1990).

---

[11]497 F.2d 529, 534–35 (5th Cir. 1974).

[12]104 Wn.2d 643, 659, 709 P.2d 1185 (1985).

[13]110 Wn.2d 32, 39; 750 P.2d 632 (1988).

## APPENDIX

INSTRUCTION NO. $\underline{23}$

SUPERIOR COURT OF WASHINGTON IN AND FOR KING COUNTY

DIANE K. GJERDE and MARVIN
GJERDE, husband and wife,

          Plaintiffs,

      v.

ULRICH FRITZSCHE, M.D.,

          Defendant.

NO. 85-2-15460-6

VERDICT FORM A

We, the jury, find for the plaintiffs on the issue of negligence.

Answer: ___No___ (Yes or No).

We, the jury, find for the plaintiffs on the issue of informed consent.

Answer: ___No___ (Yes or No).

We, the jury, answering yes to either or both of the above, find damages in the sum of \$_____ for Diane Gjerde and \$_____ for Marvin Gjerde.

We, the jury, find for the defendant on the issue of contributory negligence on the part of Diane Gjerde.

Answer: _Yes_____ (Yes or No).

If the answer to the above is yes, using 100% as the total combined negligence of the parties which contributed to the injury or damage to plaintiff Diane Gjerde, what percentage of such negligence is attributable to plaintiff Diane Gjerde?

Answer: ___45%___

_____
Foreman