IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| KATHLEEN KUK and DAVID KUK, individually and as husband and wife, | ) ) ) | No. 68617-8-I |
| Respondents, | ) ) ) | DIVISION ONE |
| v. | ) ) ) | |
| JASON SMITH and JANE DOE SMITH, individually and the marital community thereof, and UNITED PARCEL SERVICE, INC., | ) ) ) ) ) | UNPUBLISHED OPINION |
| | | FILED: July 1, 2013 |
| Appellants. | ) ) ) | |

BECKER, J. — This appeal arises from a personal injury action after a car collision. A jury found the two drivers equally at fault and awarded both parties all undisputed special damages. But the jury awarded nothing in general damages to appellant Kuk for the undisputed pain and suffering that accompanied the injury to her hand. We affirm the order granting Kuk's motion for a new trial on damages.

Around 4 p.m. on May 7, 2008, Kathleen Kuk's Honda minivan collided with a United Parcel Service delivery truck as the two vehicles attempted to pass through an intersection in Everett, Washington. Both vehicles were damaged. One of Kuk's fingers was broken.

In October 2009, Kuk and her husband sued United Parcel and the driver, Jason Smith, for negligence. United Parcel counterclaimed, alleging negligence by Kuk resulting in the damage to the truck.

A jury trial lasting three days was held in February 2012. Smith admitted that his own light was red when he began his left-hand turn into Kuk's path. Kuk testified that the light turned yellow right before she entered the intersection and that she sped up to clear the intersection before the light turned red. But an expert testified that the yellow and red lights at the intersection were timed identically for cars traveling in both directions, so when the light turned red for Smith, it was also red for Kuk. And an eyewitness testified that Kuk ran the red light. Further, there was evidence that Kuk was holding her cell phone to her ear at the time of the collision while she waited on hold to make a comment on the air with a talk radio station.

Kuk's treating physician testified that the finger injury had caused Kuk significant pain and resulted in permanent loss of motion in her dominant hand. Kuk and her family and friends testified that she suffered a lengthy period of acute pain and was still unable to participate in her former hobbies because her grip was impaired. The defendants offered no contrary medical testimony. Their closing argument suggested that the jury award general damages, but only a modest amount, to compensate Kuk for her noneconomic losses.

Jurors were instructed that if they found either party negligent, their verdict "must include" the opposing party's undisputed special damages: for Kuk,

$21,966.90 in medical costs and $12,000.00 in property damage; for United Parcel, $3,910.09 in property damage. As to Kuk's claim of noneconomic damages, the jury was told that it "should consider" a variety of factors relating to suffering due to her injury.

The jury returned a verdict finding both Smith and Kuk negligent and 50 percent at fault. The jury awarded both parties their undisputed damages, but they awarded nothing to Kuk for noneconomic damages.

Ten days after the verdict was entered, Kuk moved for a new trial on damages under CR 59. She argued the verdict was inadequate in light of the uncontroverted testimony that she suffered noneconomic damages. Smith opposed the motion. He argued that Kuk waived any objection to the inadequacy of the award by failing to object to the verdict before the jury was dismissed. The court concluded the lack of any general damages made the verdict inadequate and granted Kuk a new trial on damages. The court denied Smith's alternative argument that if a new trial was to be ordered it should be a full new trial on liability as well. Smith appeals from the order granting a new trial.

The decision to grant or deny a new trial is reviewed for abuse of discretion. Kramer v. J.I. Case Mfg. Co., 62 Wn. App. 544, 561, 815 P.2d 798 (1991). Where, as here, the appellant seeks to set aside an order granting a new trial, the reviewing court will require "a much stronger showing" of abuse of discretion than is necessary to set aside an order denying a new trial. Palmer v. Jensen, 132 Wn.2d 193, 197, 937 P.2d 597 (1997). This is because granting a

3

new trial "places the parties where they were before, while a denial of a new trial concludes their rights." Baxter v. Greyhound Corp., 65 Wn.2d 421, 437, 397 P.2d 857 (1964); Palmer, 132 Wn.2d at 197. It is an abuse of discretion to deny a motion for a new trial where the verdict is contrary to the evidence. Palmer, 132 Wn.2d at 198.

Although there is no per se rule that general damages must be awarded to every plaintiff who sustains an injury, a plaintiff who substantiates her pain and suffering with evidence is entitled to general damages. Palmer, 132 Wn.2d at 201. The adequacy of a verdict, therefore, turns on the evidence. Palmer, 132 Wn.2d at 201. The court agreed with Kuk that in light of the evidence she presented, the verdict of no general damages was clearly inadequate and could only be explained by jury passion or prejudice.

The court's order was a straightforward application of Palmer. The two cases are factually similar. In Palmer, the plaintiff presented uncontroverted medical evidence that she suffered neck and back pain for over two years after suffering a neck injury in a rear-end car collision. The jury nevertheless entered a damages verdict that was "exactly equal to" her undisputed medical expenses, with no general damages for pain and suffering. Palmer, 132 Wn.2d at 198-99. The trial court denied the plaintiff's motion for a new trial. The Supreme Court reversed, holding that the omission of general damages was contrary to the unchallenged medical evidence. Palmer, 132 Wn.2d at 203. The court ordered a new trial on damages.

Here, Smith agrees with Kuk that the undisputed medical evidence entitled her to an award of general damages under Palmer. Smith's argument to the trial court and on appeal is that the jury's error was so obvious and so inconsistent with Washington law that Kuk should have been required to object to the error immediately, before the jury was excused, so that the jury could have been sent back to deliberate again and bring in a verdict awarding general damages. Smith asks this court to fashion a new rule holding that a party waives the right under CR 59 to wait 10 days to move for a new trial based on verdict error when the basis of the motion is a clear rule of controlling case law. In such cases, he contends, it would further fairness and judicial economy to require the party to bring the inconsistency to the trial court's attention before the jury is dismissed.

Presently, a trial court is required by CR 49(b) to return the jury "for further consideration of its answers and verdict" in a case where a general verdict is inconsistent with the jury's answers to special interrogatories:

> **(b) General Verdict Accompanied by Answer to Interrogatories.** The court may submit to the jury, together with appropriate forms for a general verdict, written interrogatories upon one or more issues of fact the decision of which is necessary to a verdict. . . . When the general verdict and the answers are harmonious, the appropriate judgment upon the verdict and answers shall be entered pursuant to rule 58. When the answers are consistent with each other but one or more is inconsistent with the general verdict, judgment may be entered pursuant to rule 58 in accordance with the answers, notwithstanding the general verdict, or the court may return the jury for further consideration of its answers and verdict or may order a new trial. *When the answers are inconsistent with each other and one or more is likewise inconsistent with the general verdict, judgment shall not be entered, but the court shall return the jury for further consideration of its answers and verdict* or shall order a new trial.

5

But the rule only applies where the jury's answers "are inconsistent *with each other.*" CR 49(b) (emphasis added). This lack of *internal* consistency or coherence among the jury's various determinations is unlike the kind of *external* inconsistency with controlling case law that Kuk argued in her motion for a new trial.

When a jury verdict is internally inconsistent under CR 49, a party who does not object immediately will be held to have waived the right to challenge the verdict through a motion for a new trial under CR 59. Gjerde v. Fritzsche, 55 Wn. App. 387, 393-94, 777 P.2d 1072 (1989), review denied, 113 Wn.2d 1038 (1990). In Gjerde, the jury found against the plaintiff on her negligence claim. The instructions did not tell the jury to stop at that point, as they should have. Gjerde, 55 Wn. App. at 390. The jury went on to attribute 55 percent fault to the defendant and 45 percent to the plaintiff. Gjerde, 55 Wn. App. at 392. The trial court entered judgment on the verdict for the defendant. The plaintiff appealed, arguing that the answers attributing fault to both parties were irreconcilable with the verdict finding that the defendant was not negligent. This court held that under CR 49, a failure to object to inconsistency in the verdict before the jury is discharged waives any objection on appeal. "The situation is analogous to the failure to object to evidence or a jury instruction." Gjerde, 55 Wn. App. at 394.

Smith argues that the rule of waiver established by Gjerde should be extended beyond cases of internal inconsistency, which are covered by CR 49, to cases where the verdict is inconsistent with the law in a way that is

6

immediately recognizable.

There are a number of serious flaws in the new rule Smith proposes. First, it would require courts to decide which principles of law are to be deemed "immediately recognizable." Such a standard would be imprecise in its contours and difficult to apply. The new rule would also require counsel to have the full breadth of case law on verdicts available for instant recall when a verdict is announced, without recourse to legal research after the jury is dismissed—an unrealistically high standard of performance.

Another problem with Smith's proposal is that he would put the burden of objecting on only one party—Kuk, in the present case. But if the purpose of the proposed rule is to spare the expense of a new trial, then both parties are equally disadvantaged, and both should be expected to react immediately when the verdict is announced.

Finally, Smith's proposed new rule is inherently unfair as it would be applied in this case. When a jury fails to award general damages after hearing undisputed evidence that would justify an award, it is reasonable to infer that the jury was affected by passion or prejudice. As the trial court recognized in the order granting a new trial, the jury was likely prejudiced against Kuk. Her testimony that the light was still yellow when she started through the intersection was severely undermined, and the evidence that she was engaged with her cell phone at the time of the collision could hardly have endeared her to the jury. Smith's proposed rule would require that the factual determination of general

damages be sent back to a jury that has already manifested its prejudice against the claimant.

In summary, Palmer controls. Smith does not make a persuasive case for extending the waiver rule in Gjerde beyond the parameters of CR 49. The trial court did not abuse its discretion in granting Kuk a new trial.

Smith argues alternatively that if there is to be a new trial, it should be on liability as well as damages. His theory is that the jury heard more evidence of Kuk's negligence than of his own, so it must have been a compromise verdict. In other words, he theorizes that some jurors probably agreed to find him negligent only because others agreed to limit Kuk's damage award to her economic damages. Smith relies on Cyrus v. Martin, 64 Wn.2d 810, 394 P.2d 369 (1964), and Myers v. Smith, 51 Wn.2d 700, 321 P.2d 551 (1958). In these cases, the court held that where a claim of inadequate damages is coupled with a close case on liability, justice requires a new trial upon the entire case.

Cyrus and Myers do not support Smith's argument. To begin with, it was not a close case on Smith's liability. Smith admitted beginning his left turn after the light turned red. He failed to notice Kuk's minivan speeding toward him though it was daylight and his view was unobstructed. The jury was instructed that the "primary duty" of avoiding collisions "rests upon the driver turning to the left, which duty must be performed with reasonable regard to the maintenance of a fair margin of safety at all times."

In addition, Cyrus and Myers were premised on the old contributory

8

negligence scheme under which any negligence by a plaintiff provided a complete defense. The adoption of the comparative negligence scheme and the use of special verdict forms has effectively eliminated the concern that juries, when shown negligence by both parties, will fashion their own comparative negligence scheme by finding liability on the part of the defendant but awarding low damages. Mina v. Boise Cascade Corp., 104 Wn.2d 696, 707, 710 P.2d 184 (1985), citing Crawford v. Miller, 18 Wn. App. 151, 566 P.2d 1264 (1977). Here, because the jury was instructed on comparative negligence, liability was not an all or nothing proposition. There is no reason to suspect that the 50/50 decision on liability was anything but a true verdict. The zero general damages award may well be evidence of juror prejudice against Kuk, but it is not evidence that the jury was motivated to *falsely* attribute equal liability to Kuk's adversary. The trial court did not abuse its discretion by ordering a new trial limited to damages, as was done in Palmer.

Finally, Smith asks that if there is a new trial on liability, the trial court should be instructed to reverse the sanctions that were imposed for delay by the defendants in providing requested discovery. Because we do not order a new trial on liability, it is unnecessary to address this issue. In any event, we see no abuse of discretion. The trial court was aware of its obligation to impose "the least severe sanction that will be adequate to serve the purpose." Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wn.2d 299, 355-56, 858 P.2d 1054 (1993); Burnet v. Spokane Ambulance, 131 Wn.2d 484, 494-96, 933 P.2d

1036 (1997). The sanctions imposed were mild compared to the extreme sanctions sought by Kuk, and there is no reason to believe they unduly prejudiced the presentation of the defense case.

Affirmed.

Becker, J.

WE CONCUR:

Appelwick, J.

Schindler, J.