[No. 43121-1-II.   Division Two.   August 12, 2014.]

JEANETTE MEARS, *Individually, as Personal Representative, and as Limited Guardian*, ET AL., *Appellants*, v. BETHEL SCHOOL DISTRICT NO. 403 ET AL., *Respondents*.

920

*Paul A. Lindenmuth* and *Benjamin F. Barcus* (of *Ben F. Barcus & Associates PLLC*); and *Thaddeus P. Martin IV*, for appellants.

*Gerald J. Moberg* (of *Jerry Moberg & Associates PS*); *Daniel W. Ferm*; and *Jessie L. Harris* (of *Williams Kastner & Gibbs PLLC*), for respondents.

¶1  BJORGEN, A.C.J. — This appeal from a defense verdict in a wrongful death case arises out of the untimely death of Mercedes Mears, a student at Clover Creek Elementary School. Mercedes[1] began having difficulty breathing shortly after arriving at school on October 7, 2008. Mercedes's sister Jada Mears informed Rhonda Gibson, the school's health clerk, who escorted Mercedes to the school's health room and called 911. By the time emergency rescue personnel arrived, Mercedes had stopped breathing and lost consciousness. Resuscitation efforts failed, and she died en route to the hospital.

¶2  Mercedes's parents, Jeannette and Michael Mears, subsequently filed this suit against the Bethel School District, school health clerk Gibson, and school nurse Heidi Christensen (collectively District). They alleged that various omissions by the school's staff amounted to negligence and proximately caused Mercedes's death and that Mercedes's sister Jada could recover for the emotional distress of witnessing the death. After a long and strenuously litigated trial, the jury answered special interrogatories, finding each defendant negligent but also finding that the defendants' negligence did not proximately cause Mercedes's death. The court entered judgment for the District on the jury's verdict. The Mearses filed a motion for judgment as a matter of law on the issue of proximate cause and for a new trial solely on the issue of damages or, in the alternative, for a new trial on all issues, but the trial court denied the motion.

¶3  The Mearses appeal, arguing that the trial court erred in denying their posttrial motions, because substantial evidence does not support the jury's verdict as to proximate cause and because defense misconduct deprived them of a fair trial. The District cross appeals, claiming statutory immunity and arguing that the Mearses' failure-to-rescue theory precludes Jada's negligent infliction of

---

[1] We use the Mears family members' first names where necessary for clarity. We intend no disrespect.

emotional distress claim as a matter of law. We affirm and therefore do not address the District's cross appeal.

## FACTS

¶4 Mercedes suffered from persistent asthma and also had severe, life-threatening allergies. Shortly after arriving at school with her sister Jada and their friend Henry Dotson, Mercedes began having difficulty breathing. She sat down on a bench outside the school, saying she felt sick. Jada ran inside and returned with Gibson, the school's health clerk, who escorted Mercedes inside.

¶5 Mercedes's asthma had frequently caused her to visit the school's health room, where the school kept an inhaler prescribed by her doctor, Lawrence Larson, containing an asthma medication known as Albuterol. Gibson and other staff knew of Mercedes's asthma and understood that Mercedes also had serious food allergies. Of those present during the emergency that led to Mercedes's death, those who formed an opinion on the matter testified that they believed Mercedes was having an asthma attack, not an allergic reaction to food.

¶6 As Mercedes's condition deteriorated, her EpiPen sat in a cupboard a few feet away. An EpiPen is a medical device that allows someone with no medical training to safely inject herself or another with a premeasured dose of epinephrine, a potent hormone commonly known as adrenaline. STEDMAN'S MEDICAL DICTIONARY 585 (26th ed. 1995). Mercedes's doctor had prescribed the EpiPen, and her parents had delivered it to the school along with a signed permission form and an order from the doctor to dispense the EpiPen to Mercedes in the event of an "allergic emergency." Ex. 454.

¶7 At trial, undisputed expert testimony established that an injection of epinephrine by the time Mercedes lost consciousness probably would have saved her life. Verbatim Report of Proceedings (VRP) (Oct. 20, 2011) (Lawrence

Larson) at 48-49; VRP (Oct. 18, 2011) (Michael Freeman) at 30; VRP (Oct. 18, 2011) (Russell Hopp) at 67, 74-75. Expert testimony similarly established that, had school personnel initiated cardiopulmonary resuscitation (CPR) when Mercedes became unresponsive, she likely would have survived. The District's experts conceded that administering epinephrine posed no significant risk of harmful side effects and that an asthma attack may qualify as an "allergic emergency." VRP (Nov. 16, 2011) (Anthony Montanaro) at 73.

¶8 The notebook containing the doctor's orders for using the Albuterol inhaler and the EpiPen, along with Mercedes's "emergency health care plan," were nearby in the health room. VRP (Oct. 17, 2011) (Peggy Walker) at 87-88. School nurse Christensen had prepared the emergency health care plan, pursuant to state law and school district policy, so that staff without formal medical training could appropriately respond should Mercedes have a medical emergency. The school staff present did not open the notebook or consult the documents inside it. Those present also did not attempt to perform CPR. Instead, as Mercedes's condition worsened, they again called 911, attempted to administer additional doses of Albuterol, tried to make Mercedes more comfortable, and waited for the ambulance to arrive.

¶9 At trial, the parties sharply disputed the cause of Mercedes's death. The medical examiner who performed the autopsy had attributed her death to asthma, and experts called by the District concurred. The District presented expert testimony that "uncontrolled asthma" also sometimes results in sudden death. VRP (Nov. 16, 2011) (Montanaro) at 35-37. The Mearses presented opinion testimony from Dr. Larson and a forensic pathologist that Mercedes had more likely died of anaphylaxis, a sudden and often fatal allergic reaction that affects various body functions, including the respiratory system.

¶10 The District cross-examined Dr. Larson extensively, over the Mearses' objection, concerning Flovent, an inhaled

corticosteroid medication used for long-term control of asthma, which had been prescribed for Mercedes. The day after Dr. Larson's testimony, the Mearses offered a curative instruction concerning the Flovent testimony. A few days later, the Mearses moved to strike all testimony concerning Flovent and proposed another curative instruction on the issue. The trial court refused to give the Mearses' proposed instructions, instead giving a different instruction allowing consideration of Flovent only for the limited purpose of Mercedes's prior asthma condition.

¶11 After the close of evidence, the Mearses moved for judgment as a matter of law on the issue of proximate cause as to certain undisputed items of damages. The trial court granted the Mearses' motion in part and included the undisputed items as mandatory on the damages portion of the verdict form. The court also ruled that neither an infection nor the nonuse of Flovent proximately caused Mercedes's death and prohibited argument to the contrary, but allowed the District to argue that Mercedes died of uncontrolled asthma and that Flovent was important in controlling asthma.

¶12 The jury returned answers to special interrogatories finding Gibson, Christensen, and the school district all negligent but also finding that their negligence did not proximately cause Mercedes's death. The trial court entered judgment for the District on the jury's verdict.

¶13 The Mearses moved for judgment as a matter of law as to proximate cause and a new trial limited to the issue of damages or, in the alternative, for a new trial as to all issues. The trial court denied the motion. The Mearses timely appealed, and the District cross appealed. Because we affirm the judgment, we do not reach the issues raised in the District's cross appeal.

## ANALYSIS

### INTERNAL CONSISTENCY OF THE JURY'S ANSWERS ON THE VERDICT FORM AND THEIR CONSISTENCY WITH THE EVIDENCE

¶14 The Mearses initially contend that the trial court erred in denying their motion for a new trial and, alternatively, for judgment as a matter of law because the jury's verdict was inconsistent and contrary to the evidence. The District contends that the Mearses base their argument on a false premise and that the verdict "is consistent and supported by substantial evidence in the record." Br. of Resp't at 49. We agree with the District.

### A. *Standard of Review*

¶15 We review de novo a trial court's denial of a motion for judgment as a matter of law. *Bishop of Victoria Corp. Sole v. Corp. Bus. Park, LLC*, 138 Wn. App. 443, 454, 158 P.3d 1183 (2007). In that review, we engage in the same inquiry as the trial court, admitting the truth of the nonmoving party's evidence and all reasonable inferences that can be drawn from it. *Faust v. Albertson*, 167 Wn.2d 531, 537, 222 P.3d 1208 (2009). A motion for judgment as a matter of law is properly granted only when the court can find, as a matter of law, that there was no substantial evidence or reasonable inference to sustain a verdict for the nonmoving party. *Guijosa v. Wal-Mart Stores, Inc.*, 144 Wn.2d 907, 915, 32 P.3d 250 (2001).

¶16 We review an order denying a motion for a new trial for abuse of discretion by the trial court. *See Alum. Co. of Am. v. Aetna Cas. & Sur. Co.*, 140 Wn.2d 517, 537, 998 P.2d 856 (2000) (ALCOA). Generally, a trial court abuses its discretion in denying a motion for a new trial if " 'such a feeling of prejudice [has] been engendered or located in the minds of the jury as to prevent a litigant from having a fair trial.' " *ALCOA*, 140 Wn.2d at 537 (quoting *Moore v. Smith*,

89 Wn.2d 932, 942, 578 P.2d 26 (1978)). However, the deference usually shown a trial court's denial of a new trial does not apply when the court based the decision on an issue of law. *Ayers v. Johnson & Johnson Baby Prods. Co.*, 117 Wn.2d 747, 768, 818 P.2d 1337 (1991). Review of a denial of a new trial based on an issue of law is de novo. *Ayers*, 117 Wn.2d at 768; *see* CR 59(a) (ground for new trial).

¶17 A trial court may grant a new trial after the jury has returned a verdict when "there is no evidence or reasonable inference from the evidence to justify the verdict." CR 59(a)(7). A trial court abuses its discretion by denying a motion for a new trial where the verdict is contrary to the evidence. *Palmer v. Jensen*, 132 Wn.2d 193, 198, 937 P.2d 597 (1977). When a litigant unsuccessfully moves for a new trial on the ground that the verdict was contrary to the evidence, we review the record to determine whether sufficient evidence supported the verdict. *Palmer*, 132 Wn.2d at 197-98. In this analysis we consider the evidence in the light most favorable to the nonmoving party. *Hojem v. Kelly*, 93 Wn.2d 143, 145, 606 P.2d 275 (1980). "Substantial evidence" is required, meaning evidence of a character " 'which would convince an unprejudiced, thinking mind of the truth of the fact to which the evidence is directed.' " *Hojem*, 93 Wn.2d at 145 (quoting *Arnold v. Sanstol*, 43 Wn.2d 94, 98, 260 P.2d 327 (1953)). Although reasonable inferences from the evidence suffice to support a verdict, "mere theory or speculation" alone does not. *Hojem*, 93 Wn.2d at 145.

¶18 In evaluating a claim of inconsistent findings on a special verdict form, we must reconcile the jury's answers and we do not substitute our judgment for the jury's. *Estate of Stalkup v. Vancouver Clinic, Inc.*, 145 Wn. App. 572, 586, 187 P.3d 291 (2008). If the answers on the verdict form reveal a clear contradiction, however, such that we cannot determine how the jury resolved an ultimate issue, we will remand for a new trial. *Stalkup*, 145 Wn. App. at 586. A jury verdict finding a defendant negligent, but

also finding that the negligence did not proximately cause the plaintiff's injuries, "is not inconsistent if there is evidence in the record to support a finding of negligence but also evidence to support a finding that the resulting injury would have occurred regardless of the defendant's actions." *Stalkup*, 145 Wn. App. at 586 (citing *Brashear v. Puget Sound Power & Light Co.*, 100 Wn.2d 204, 209, 667 P.2d 78 (1983)).

B. *Whether the Mearses Have Preserved the Issues for Review on Appeal*

¶19  As a preliminary matter, the District urges us not to consider the alleged inconsistency because the Mearses did not raise it when the court polled the jury and thus failed to preserve the issue. The relevant court rule provides that

> [w]hen the answers [to the jury interrogatories] are inconsistent with each other and one or more is likewise inconsistent with the general verdict, judgment shall not be entered, but the court shall return the jury for further consideration of its answers and verdict or shall order a new trial.

CR 49(b). We have declined to consider challenges based on seemingly inconsistent answers to jury interrogatories where the appealing party did not raise the alleged inconsistencies prior to the discharge of the jury. *Gjerde v. Fritzsche*, 55 Wn. App. 387, 393, 777 P.2d 1072 (1989) ("We decline to consider this challenge to the jury interrogatories, because Gjerde waived the issue below by failing to bring the inconsistency in the answers to the interrogatories to the attention of the court at the time the jury was polled."); *accord Minger v. Reinhard Distrib. Co.*, 87 Wn. App. 941, 946, 943 P.2d 400 (1997); *State v. Barnes*, 85 Wn. App. 638, 668, 932 P.2d 669 (1997).

¶20  In other cases, however, we have addressed the merits of claims based on inconsistency in a verdict despite the failure to raise the issue prior to the discharge of the jurors. In *Malarkey Asphalt Co. v. Wyborney*, 62 Wn. App.

495, 510-11, 814 P.2d 1219 (1991), for example, Division One of our court rejected a similar waiver argument and reached the inconsistency claim, distinguishing *Gjerde* on the ground that the record there showed that counsel had immediately recognized the inconsistency but "deliberately remained silent" in order to obtain a second chance with a different jury.[2]

¶21 We do not attempt to resolve these divergent approaches to the waiver question here. In order to provide guidance to trial courts faced with inconsistent verdict claims, and because we ultimately conclude that no inconsistency appears in the verdict, we address the Mearses' claim.

*C. The Trial Court Did Not Err in Denying the Motion for Judgment as a Matter of Law and for a New Trial Based on Inconsistency in the Verdict or Its Inconsistency with the Evidence*

¶22 We begin with the parties' dispute over the proper scope of our inquiry. Specifically, they disagree as to whether the jury's decision constituted a general or a special verdict, a question on which the proper analysis of the issue depends.

¶23 The Mearses contend that the jury's answers to the questions on the verdict form amounted to a general verdict because "specific interrogatories were not provided for a determination of each specific allegation of negligence" the

---

[2] The *Gjerde* court did appear to limit its holding to the factual circumstances presented:

"If counsel who had submitted the questions . . . raised no objection to the discharge of the jury, we can, at least under the circumstances of this case, see no reason why he should be permitted to try his luck with a second jury."

. . . .

Such silence in the face of actual knowledge of an inconsistency at a time it could be cured waives the issue on appeal.

55 Wn. App. at 394 (quoting *Strauss v. Stratojac Corp.*, 810 F.2d 679, 683 (7th Cir. 1987)). Although the *Minger* court purported to follow *Gjerde*, it did not recognize *Gjerde*'s limitation to its circumstances or discuss actual knowledge of the inconsistency. *Minger*, 87 Wn. App. at 945-46.

Mearses had made. Br. of Appellant at 48. Because "[a] general verdict is that by which the jury pronounces generally upon all or any of the issues," CR 49(-), the Mearses argue that "it must be presumed that the jury found in [the Mearses'] favor with respect to all claims of negligence set forth within the pleadings and proof presented" at trial, including the allegation that the District negligently failed to administer epinephrine or perform CPR. Br. of Appellant at 49. The Mearses then argue that, because they presented unrebutted expert testimony that Mercedes would likely have survived had the District taken either of these measures, the jury's finding as to proximate cause has "no factual basis within the evidence." Br. of Appellant at 50 (emphasis omitted).

¶24 The District, on the other hand, characterizes the "central question" as "whether the answers in the special verdict are consistent" according to "some plausible scenario" supported by substantial evidence in the record, pointing out that courts must seek to harmonize a seemingly inconsistent jury verdict. Br. of Resp't at 32-33. The District thus argues that, as long as the record contains substantial evidence from which the jury could reasonably have found that the defendants committed negligent acts or omissions that did not proximately cause Mercedes's death, the jury's verdict must stand. The District maintains that the evidence and instructions in the case allowed for a number of plausible scenarios under which the jury could find the District negligent but also find that the negligent acts or omissions did not proximately cause Mercedes's death.

¶25 At the outset, we cannot accept the Mearses' argument that the jury's finding of negligence requires us to presume that it agreed with each and every allegation the Mearses made that some act or omission by the District breached the duty of due care. As a matter of logic, a plaintiff who prevails on a negligence claim in an auto accident case, for example, after presenting evidence that a

defendant both drove at excessive speed and failed to take a driver's education course in high school, has not established that the jury found that the defendant's lack of training proximately caused the accident.

¶26 Turning to the characterization of the verdict, we have treated verdict forms with substantially similar interrogatories as special verdicts. *Stalkup*, 145 Wn. App. at 587 ("The trial court submitted a two-part special verdict form to the jury, and the jury found that the power company was negligent but that its negligence was not a proximate cause of the plaintiff's injuries."). Our Supreme Court's decision in *Guijosa*, 144 Wn.2d at 918, however, makes clear that neither a court's labeling a document as a special verdict form nor its inclusion of interrogatories in the verdict form is dispositive. The *Guijosa* court rejected our characterization of a verdict form that included interrogatories for each defendant with respect to each claim as a special verdict form, holding instead that, because the jury's answers resolved ultimate questions regarding particular claims, they constituted multiple general verdicts. 144 Wn.2d at 918.

¶27 At first blush, the answer to the first question the verdict form posed to the jury here, "Were any of the defendants negligent?," might appear to resolve an ultimate issue with respect to the Mearses' negligence claim. Clerk's Papers (CP) at 3196; *see Keller v. City of Spokane*, 146 Wn.2d 237, 242, 44 P.3d 845 (2002) ("The elements of negligence are duty, breach, causation, and injury."). The word "negligence," however, also has the more limited meaning of "conduct that falls below the legal standard established to protect others against unreasonable risk of harm." BLACK'S LAW DICTIONARY 1133 (9th ed. 2009). The context makes clear that the trial court intended the jury to understand this question to refer only to this more limited definition of "negligence," corresponding to the duty and breach elements of a negligence claim; otherwise, the court would not have needed to include an interrogatory on

proximate cause. As such, the answer to the interrogatory does not ultimately resolve any particular claim; instead, it merely establishes two elements of a claim. Thus, the jury's findings here amounted to a special verdict.

¶28 Having established that we are considering a special verdict, our Supreme Court's analysis in *Brashear*, 100 Wn.2d at 209, controls. Brashear had alleged four different acts of negligence at trial, including failure to warn, and "[t]he jury found, in answer to interrogatories, that Puget Power was negligent but that its negligence was not the proximate cause of [Brashear's] injuries." *Brashear*, 100 Wn.2d at 206. The trial court denied Brashear's motion for judgment as a matter of law and entered a judgment for Puget Power on the jury's verdict. *Brashear*, 100 Wn.2d at 206. We reversed and entered judgment for Brashear, holding the verdicts inconsistent and concluding that the evidence presented failed to adequately support the finding that Puget Power's breach did not proximately cause Brashear's injuries. *Brashear*, 100 Wn.2d at 206. Our Supreme Court, however, held that "[a]lthough the verdict appears inconsistent when analyzed, as the Court of Appeals did, using the first three theories of negligence, . . . the strong presumption in favor of jury verdicts . . . requires a contrary result." *Brashear*, 100 Wn.2d at 209. Because the failure-to-warn allegation did not necessarily conflict with the jury's finding of no proximate cause, our Supreme Court found no inconsistency and would have reinstated the verdict but for the trial court's defective proximate cause instruction. *Brashear*, 100 Wn.2d at 209.

¶29 We followed *Brashear* in *Stalkup*, a medical malpractice case in which the plaintiff alleged numerous negligent acts and omissions, and the jury, using a form indistinguishable from that used here, found the defendant negligent but also found that the defendant's negligence did not proximately cause the injuries. *Stalkup*, 145 Wn. App. at 582. The trial court ordered a new trial based in part on a perceived inconsistency in the verdict. *Stalkup*, 145 Wn.

App. at 586. We reversed, holding that "the trial court erred when it granted a new trial based on the 'inconsistency' of the jury verdict" because "there was more than one scenario under which the jury's findings of negligence but lack of proximate cause can be reconciled." *Stalkup*, 145 Wn. App. at 591.

¶30 These decisions leave no room for the Mearses' contention that the jury's finding as to negligence requires us to assume that the jurors agreed that every act or omission alleged by the Mearses had breached the due care standard. The trial court therefore did not err in denying the Mearses' motion for judgment as a matter of law on the issue of proximate cause. Further, as long as the Mearses alleged that each defendant committed some act or omission that the jury could properly have found to be negligent, but not a proximate cause of Mercedes's death, no inconsistency would lie in the verdict, and it would have been within the trial court's discretion to deny the alternative motion for a new trial as to all issues. We examine now whether evidence was submitted from which the jury could have reasonably concluded that the acts or omissions alleged by the Mearses against each defendant were negligent but did not lead to Mercedes's death.

¶31 With respect to defendant Gibson, the Mearses presented evidence that Gibson did not attempt to consult Mercedes's emergency health care plan or contact a school nurse during Mercedes's medical emergency, and the Mearses' counsel argued in closing that these omissions violated the duty of due care under the circumstances. The jury could have agreed that these omissions established breach of duty but still reasonably concluded that had Gibson called the nurse and consulted the plan, she still would not have administered epinephrine or initiated CPR and Mercedes still would have died.

¶32 With respect to defendant Christensen, the Mearses presented voluminous evidence concerning Christensen's failure to properly complete students' emergency health

care plans, including Mercedes's, as well as other important administrative tasks. Again, the Mearses' counsel argued that these failures breached the duty of due care. Certainly, the jury could have agreed that this evidence established a breach of duty but still reasonably concluded that even had Christensen timely completed all her health care plans, the staff present that day could not have been expected to administer epinephrine or begin CPR.

¶33 Having found Gibson and Christensen breached the duty of due care, the trial court's instructions required the jury to impute those breaches to the District as a matter of law. Thus, the jury could also have imputed to the District the alleged breaches just discussed and still reasonably have found that those breaches did not proximately cause Mercedes's death. Alternatively, the jury could have agreed that the District breached a duty by not properly supervising Christensen, as the Mearses' counsel argued, and still reasonably concluded that better supervision would not have helped Mercedes.

¶34 The jury's findings in this case do not clearly contradict themselves, and substantial evidence in the record supports them. The trial court did not err in denying the Mearses' motion for judgment as a matter of law or for a new trial.

¶35 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

HUNT and MAXA, JJ., concur.

Review denied at 182 Wn.2d 1021 (2015).