# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| LISA DUNAKIN and MICHAEL DUNAKIN, individually and on behalf of their marital community, | ) ) ) ) | No. 72819-9-I |
| Appellants, | ) ) ) | |
| v. | ) ) ) | |
| MAHER M. ANOUS, M.D., F.A.C.S., d/b/a PROVENCE ESTHETIC SURGERY CLINIQUE & MEDICAL SPA, | ) ) ) ) ) | UNPUBLISHED OPINION |
| Respondent. | ) ) ) | FILED: October 12, 2015 |

VERELLEN, A.C.J. — The jury in this medical malpractice case answered "yes" to the special verdict question whether Dr. Maher Anous failed to secure Lisa Dunakin's "informed consent" before surgery, and "no" to the question whether the failure to obtain informed consent proximately caused her injury. Dunakin argues those answers are inconsistent because the jury had been instructed that the four elements of an informed consent claim include proximate cause. But Dunakin did not object to the jury instructions or the special verdict form. And she did not raise any challenge to those answers until she filed her motion for new trial, 10 days after the jury returned its verdict.

We conclude that, on the record before us, Dunakin fails to establish that the jury's answers to the special verdict questions are inconsistent.

FACTS

Dr. Anous performed reconstructive surgery on Lisa Dunakin. Dunakin had postoperative complications and sued Dr. Anous for medical negligence and lack of informed consent.

The informed consent jury instructions stated:

Instruction No. 9.

A physician has a duty to inform a patient of all material facts, including risks and alternatives, that a reasonably prudent patient would need in order to make an informed decision on whether to consent to or reject a proposed course of treatment.

A material fact is one to which a reasonably prudent person in the position of the patient would attach significance in deciding whether or not to submit to the proposed course of treatment.[1]

Instruction No. 10.

In connection with the plaintiffs [sic] claim of injury as a result of the failure to obtain the patient's informed consent to the treatment undertaken, the plaintiff has the burden of proving each of the following propositions:

First, that the defendant failed to inform the patient of a material fact or facts relating to the treatment;

Second, that the patient consented to the treatment without being aware of or fully informed of such material fact or facts;

Third, that a reasonably prudent patient under similar circumstances would not have consented to the treatment if informed of such material fact or facts; and

---

[1] Clerk's Papers (CP) at 399.

2

Fourth, that the treatment in question was a proximate cause of injury to the patient.

If you find from your consideration of all of the evidence that each of these propositions has been proved, your verdict should be for the plaintiff. On the other hand, if any of these propositions has not been proved, your verdict should be for the defendant.[2]

Dunakin did not object to these instructions.

The special verdict form included:

QUESTION NO. 1: Did Maher M. Anous, M.D. fail to secure Lisa Dunakin's informed consent related to the November 10, 2009 surgery?

Answer: _____ (yes or no)

If you answer "no," please skip Question No. 2 and proceed to answer Question No. 3. If you answer "yes," please answer Question No. 2 below.

QUESTION NO. 2: Was such failure to obtain informed consent a proximate cause of injury or damage to Lisa Dunakin?

Answer: _____ (yes or no)[3]

Dunakin did not object to this special verdict form.

During deliberations, the jury submitted an inquiry to the trial court:

In regards to Instruction No. 10, if one of the four propositions is found as cannot be proved, does that require or dictate an answer of 'no' for Question one (1) of the verdict sheet?[4]

The trial court directed the jury to "re-read Instruction No. 10."[5]

---

[2] CP at 400.

[3] CP at 262-63.

[4] CP at 265.

[5] CP at 266.

The jury answered "yes" to question 1, whether Dr. Anous failed to secure Dunakin's informed consent before surgery. Because the jury answered "yes," the special verdict form directed the jury to answer the second question. The jury answered "no" to question 2, whether the failure to obtain informed consent proximately caused Dunakin's injury. When the trial court polled the jury, Dunakin did not object to any alleged inconsistency in the verdict.

Ten days after the jury rendered its verdict, Dunakin moved for a new trial. The trial court denied Dunakin's motion, rejecting her argument that the special verdict answers were inconsistent. The court also concluded she waived any alleged inconsistency in the verdict by failing to timely raise the issue.

Dunakin appeals.

## ANALYSIS

### Inconsistent Verdict

Dunakin contends the jury returned an inconsistent verdict. We disagree.

If the special verdict "contains contradictory answers to interrogatories making the jury's resolution of the ultimate issue impossible to determine, a new trial is required."[6] Answers to interrogatories in a special verdict should be read harmoniously to support a judgment.[7] "In harmonizing a verdict, the court does not

---

[6] Estate of Stalkup v. Vancouver Clinic, Inc., PS, 145 Wn. App. 572, 586, 187 P.3d 291 (2008).

[7] Minger v. Reinhard Distrib. Co., Inc., 87 Wn. App. 941, 945, 943 P.2d 400 (1997) (quoting Dep't of Highways v. Evans Engine Co., 22 Wn. App. 202, 204, 589 P.2d 290 (1978)).

4

read the special verdict in isolation, but as part of the whole verdict, including the jury instruction[s]."[8]

Dunakin argues the jury could only answer "yes" to question 1—that Dr. Anous failed to secure informed consent—if the jury found that all four elements of informed consent set forth in jury instruction 10 were established, including proximate cause. Thus, according to Dunakin, it was inconsistent for the jury to answer "yes" to question 1 but "no" to question 2 that the failure to secure Dunakin's informed consent did not proximately cause her injury.

Three Washington cases analyze a similar inconsistent verdict argument in analogous settings.[9] In these cases, the special verdict form asked whether the defendant was negligent, defined in the jury instructions to include the elements of duty, breach, proximate cause, and damages. Then, if the jury answered "yes," the verdict form directed the jury to separately answer whether the defendant's negligence proximately caused the plaintiff's injury. All three cases used the same test for an alleged inconsistent verdict:

> A jury verdict finding that a defendant is negligent but that the negligence was not a proximate cause of the plaintiff's injuries is not inconsistent if there is evidence in the record to support a finding of negligence but also evidence to support a finding that the resulting injury would have occurred regardless of the defendant's actions.[10]

---

[8] Guijosa v. Wal-Mart Stores, Inc., 101 Wn. App. 777, 797, 6 P.3d 583 (2000).

[9] Brashear v. Puget Sound Power & Light Co., 100 Wn.2d 204, 667 P.2d 78 (1983) (negligence); Mears v. Bethel Sch. Dist. No. 403, 182 Wn. App. 919, 332 P.3d 1077 (2014) (negligence); Estate of Stalkup v. Vancouver Clinic, Inc., PS, 145 Wn. App. 572, 187 P.3d 291 (2008) (medical negligence).

[10] Estate of Stalkup, 145 Wn. App. at 586 (citing Brashear, 100 Wn.2d at 209); see, e.g., Mears, 182 Wn. App. at 933 ("[A]s long as the Mearses alleged that each defendant committed some act or omission that the jury could properly have found to

The logic underlying this test is that there can be situations when the same evidence offered to establish a breach of duty would necessarily establish that the breach proximately caused injury. There could only be both breach and proximate cause or neither. In such a setting, answering "yes" to negligence but "no" to proximate cause would be inconsistent. But if the evidence supporting a breach of duty is separate from the evidence that the breach was not the proximate cause of injury, then a jury could find a breach of duty and also find no proximate cause without being inconsistent.

Dunakin argues this test does not apply in the informed consent context because an informed consent claim uses an objective, "reasonably prudent patient" standard rather than a subjective, fact-based standard.[11] Informed consent does use an objective standard to determine whether a reasonably prudent patient would have consented to treatment if informed of all material facts. But that difference does not impact whether the special verdict is inconsistent. We conclude the same test for inconsistency as used in the negligence context applies equally to the informed consent context.

---

be negligent, but not a proximate cause of Mercedes's death, no inconsistency would lie in the verdict.").

[11] See, e.g., Mohr v. Grantham, 172 Wn.2d 844, 850, 262 P.3d 490 (2011) (to establish proximate cause in a medical negligence case, the plaintiff must show that "'he or she would not have been injured but for the health care provider's failure to use reasonable care.'" (quoting Hill v. Sacred Heart Med. Ctr., 143 Wn. App. 438, 448, 177 P.3d 1152 (2008))); Backlund v. Univ. of Wash., 137 Wn.2d 651, 667, 975 P.2d 950 (1999) ("'The Legislature has clearly stated what is required [for the third element of an informed consent claim]: the plaintiff must establish that a reasonably prudent patient under similar circumstances would not have consented to the treatment if informed of such material fact or facts[.]'" (second alteration in original) (internal quotation marks omitted) (citing RCW 7.70.050(1)(c))).

To apply that test, we must review the evidence regarding the alleged failure to advise the patient of material facts, as well as evidence related to whether a reasonably prudent patient would have undergone the surgery. Dunakin has the burden to provide an adequate record on appeal.[12] Here, we have only summaries of parts of the record by counsel; we do not have the report of proceedings from the 10-day trial. We conclude the record is inadequate to determine if there is a true inconsistency in the special verdict.

We also note the term "negligence" has both (1) a limited meaning of a breach of the standard of care and (2) a broad meaning including all four elements of duty, breach, proximate cause, and injury. Mears v. Bethel School District No. 403 expressly recognized that the bifurcation of negligence and proximate cause in the special verdict form used "negligence" in the narrow, more limited meaning.[13]

Similar to Mears, the term "informed consent" has a limited meaning: a health care provider's "duty to disclose relevant facts about the patient's condition and the proposed course of treatment so that the patient may exercise the right to make an informed health care decision."[14] The bifurcation of "informed consent" and "proximate cause" in the special verdict form can be harmonized if "informed consent" in question 1 was a limited reference to the element of failure to "inform the patient of

---

[12] Story v. Shelter Bay Co., 52 Wn. App. 334, 345, 760 P.2d 368 (1988).

[13] 182 Wn. App. 919, 931, 332 P.3d 1077 (2014) ("The word 'negligence,' however, also has the more limited meaning of 'conduct that falls below the legal standard established to protect others against unreasonable risk of harm.'" (quoting BLACK'S LAW DICTIONARY 1133 (9th ed. 2009))).

[14] Stewart-Graves v. Vaughn, 162 Wn.2d 115, 122, 170 P.3d 1151 (2007).

a material fact or facts relating to the treatment."[15] Because answers in a special verdict should be read harmoniously to support a judgment, we conclude "informed consent" as used in this special verdict form did not render the jury's answers inconsistent.

Additionally, we view Dunakin's arguments as an indirect attack on the directions contained in the special verdict form for the jury to answer question 2 if it answered "yes" to question 1. Dunakin suggests question 2 should have never been before the jury. But Dunakin agreed to the jury instructions and the special verdict form and therefore did not preserve any direct or indirect challenge to them.[16]

### Waiver

We also conclude Dunakin waived any alleged inconsistency by failing to timely raise the issue when the jury returned its verdict.

The policy underlying waiver is that a party must timely raise a concern to allow the trial court a reasonable opportunity to cure it.[17] For alleged inconsistent special verdict answers, the trial court should be given the opportunity to resolve any

---

[15] RCW 7.70.050(1)(a).

[16] Although similar informed consent special verdict forms have been used, see, e.g., DAVID K. DEWOLF, 6B WASHINGTON PRACTICE: CIVIL JURY INSTRUCTION HANDBOOK § 2:7, at 250-51 (2014-15), the special verdict form used here by the agreement of the parties is not a model form. Dunakin's proposed special verdict form for question 1 would have avoided any suggestion of inconsistency: "Did defendant Dr. Anous fail to inform the plaintiff of material facts that a reasonably prudent person in the position of the patient would attach significance in the deciding whether or not to submit to the prosed [sic] course of treatment?" CP at 60. Or a special verdict form asking the jury to answer "yes" or "no" to each of the four elements of informed consent would also avoid the alleged inconsistency at issue here.

[17] State v. Scott, 110 Wn.2d 682, 685, 757 P.2d 492 (1988); State v. Bertrand, 165 Wn. App. 393, 400, 267 P.3d 511 (2011).

inconsistency by polling the jury or reframing the questions to eliminate the inconsistency. For example, if Dunakin had raised the alleged inconsistency when the jury returned its verdict, the trial court could have requested the jurors to answer four questions separately addressing the four elements of informed consent. A series of cases have applied waiver in this setting.[18]

Dunakin argues we need not apply waiver in this setting. There may be settings when an appellate court declines to apply waiver for the failure to object at the time the jury returns an inconsistent verdict,[19] but we conclude waiver applies here. Notably, the jury here inquired whether all four elements for informed consent were required to answer "yes" to question 1 in the special verdict form. This inquiry alerted the parties that the jury was focused upon the same concerns that underlie Dunakin's arguments on appeal. Dunakin had an opportunity below to clarify the jury's determination as to each of the four elements of informed consent. Consistent with the policy underlying waiver, Dunakin should have given the trial court an opportunity to cure the alleged inconsistent verdict.

---

[18] Minger v. Reinhard Distrib. Co., Inc., 87 Wn. App. 941, 946, 943 P.2d 400 (1997) (appellants "waived any objection to the verdict based on the alleged inconsistency by failing to bring it to the attention of the trial court at the time the jury was polled and before the jury were discharged"); Gjerde v. Fritzsche, 55 Wn. App. 387, 393, 777 P.2d 1072 (1989) (declining to consider on appeal a challenge to jury interrogatories because appellant waived the issue "by failing to bring the inconsistency in the answers to the interrogatories to the attention of the court at the time the jury was polled.").

[19] Malarkey Asphalt Co. v. Wyborney, 62 Wn. App. 495, 510-11, 814 P.2d 1219, 821 P.2d 1235 (1991) (failure to object not deemed a waiver); see also Mears, 182 Wn. App. at 929 (acknowledging the "divergent approaches to the waiver question" but declining to analyze waiver).

## CONCLUSION

We conclude that, on the record before us, Dunakin fails to establish that the answers to the questions in the special verdict are inconsistent and that Dunakin waived the ability to challenge any alleged inconsistency on appeal.

Affirmed.

WE CONCUR: