# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| JOHN BOESPFLUG, | No.  59575-3-II |
| Respondent, | |
| v. | |
| STATE OF WASHINGTON, DEPARTMENT OF LABOR AND INDUSTRIES, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — The Washington State Department of Labor and Industries (DLI) appeals the trial court's order denying its motion for summary judgment.  DLI contends that the trial court's denial was based on an improper expansion of the issue on remand from a prior appeal.  DLI also appeals the trial court's denial of its CR 50 motion for judgment as a matter of law.

The trial court's denial of DLI's motion for summary judgment was based on a proper construction of the issue on remand from the prior appeal and on a finding that material facts were in dispute, which were subsequently decided by a trier of fact.  Further, the trial court properly denied DLI's CR 50 motion.  Accordingly, we affirm.

FACTS

A.    BACKGROUND

In 2017, John Boespflug filed suit against DLI for several alleged instances of whistleblower retaliation.  The trial court granted summary judgment in favor of DLI, and Boespflug appealed the trial court's order dismissing his claims.  *Boespflug v. Dep't of Lab. &*

*Indus.*, No. 83301-4-I, slip op. at 7 (Wash. Ct. App. Feb. 28, 2022) (unpublished),[1] (*Boespflug* I). Division I of this court affirmed summary judgment but remanded one claim to the trial court: "the alleged act of retaliation involving the lack of an ergonomic evaluation for the selection of a replacement vehicle, which presents genuine issues of material fact." *Id.* at 27.

In 1987, Boespflug began working as an electrical inspector and compliance officer for DLI. Boespflug ensured that electrical installations met the minimum safety requirements, and he verified that those completing electrical work obtained the proper licensure and certifications. While working under his supervisor, Jeffrey Ault, Boespflug submitted several whistleblower complaints. Around the time he submitted these complaints, Boespflug received an "'unsatisfactory'" performance evaluation, Ault sent Boespflug emails that Boespflug considered unwarranted or unsubstantiated reprimands, DLI assigned Boespflug to a different inspection area, and DLI replaced his work vehicle without providing him an ergonomic evaluation. *Id.* at 17, 20, 22, 24 (quoting record).

On October 17, 2017, Boespflug filed suit against DLI claiming several instances of retaliation for his whistleblower complaints under chapters 42.40 and 49.60 RCW. In relevant part, Boespflug alleged that DLI retaliated against him by assigning him a newer vehicle without conducting an ergonomic evaluation and argued that such conduct was inconsistent compared to other employees. *Id.* at 24.

In 2020, the trial court granted summary judgment in favor of DLI despite declarations from employees Robert Matson and Michael Hurlbut who received ergonomic evaluations before

---

[1] https://www.courts.wa.gov/opinions/pdf/833014.pdf

receiving new vehicles. *Id.* at 7, 24. Boespflug appealed the trial court's summary judgment order dismissing his claims. *Id.* at 8.

On appeal, Division I of this court affirmed summary judgment in favor of DLI except as to "the alleged act of retaliation involving the lack of an ergonomic evaluation for the selection of a replacement vehicle, which presents genuine issues of material fact." *Id.* at 27. The court explained:

> There are questions of fact whether the failure by [DLI] to provide him an ergonomic evaluation before assigning him a newer vehicle was a reprisal or retaliatory action, whether his whistleblower status caused his vehicle reassignment without an ergonomic evaluation, whether [DLI]'s failure to conduct an ergonomic evaluation was "justified," and whether improper motive was not a substantial factor.

*Id.* at 2.

The court concluded that "viewing the evidence in the light most favorable to Boespflug, there are genuine issues of material fact whether [DLI]'s failure to conduct an ergonomic evaluation was inconsistent compared to the treatment of other employees and was therefore a reprisal or retaliatory action." *Id.* at 24. The court specifically highlighted the declarations from DLI employees, determining that "[v]iewed in a light most favorable to Boespflug, especially the testimony of Matson regarding a standard practice, the evidence establishes genuine issues of material fact whether retaliation was a substantial factor in [DLI]'s decision to issue Boespflug a newer vehicle without first conducting an ergonomic evaluation." *Id.* at 24-25. And the court further determined that "[u]nder the rebuttable presumption of RCW 42.40.050(2), questions of fact remain whether [DLI] can rebut the presumption of retaliation by demonstrating justified reasons unrelated to Boespflug's whistleblower status." *Id.* at 25. Accordingly, the court reversed

summary judgment as to the "alleged act of retaliation involving the lack of an ergonomic evaluation for the selection of a replacement vehicle." *Id.* at 27.

B.    MOTION FOR SUMMARY JUDGMENT ON REMAND

On remand, DLI again filed a motion for summary judgment with a new declaration from Angela Ericksen, who was the regional health and safety coordinator. In her declaration, Ericksen stated that prior to April 2017, DLI "only offered employees ergonomic assessments for work vehicles upon request." Clerk's Papers (CP) at 53. She further stated that "[a]n employee either had to explicitly request an assessment via email or otherwise make [DLI] aware of the need for one." CP at 53.

The trial court heard arguments on DLI's motion for summary judgment in January 2024. DLI contended that summary judgment was proper because the failure to provide an ergonomic assessment was due to DLI's policy of only offering assessments upon request. DLI argued that the sole issue on remand was "whether Mr. Boespflug should have received an ergonomic assessment as a matter of course." Verbatim Rep. of Proc. (VRP) (Jan. 11, 2024) at 8.

Before making its ruling, the trial court discussed the remaining issue on remand:

> [DLI] asks the court to dismiss the sole remaining claim in this case, because they assert that there is no issue of material fact as to whether [DLI]'s policy requires a request from an employee before an ergonomic assessment is done and that the plaintiff did not make a request.
>
> This court, in reviewing the Court of Appeals decision as well as the record in this case, believes that the question is not as narrow as defined by [DLI], and that actually is reflected in the language of the Court of Appeals. When they indicate questions of fact, they include whether the defendant's failure to conduct an ergonomic evaluation was justified and whether improper motive was not a substantial factor.

VRP (Jan. 11, 2024) at 29-30. Accordingly, the trial court ruled as follows:

> The court concludes that there remain issues of material fact that preclude summary judgment dismissal of the remaining claim. Those issues include the standard practice and some of the statements the Court of Appeals opinion contains, whether the failure to conduct an ergonomic evaluation was justified, whether improper motive was not a substantial factor. There remain issues of fact as to those issues, and so the court is denying the motion for summary judgment at this time.

VRP (Jan. 11, 2024) at 31.

C.    PRETRIAL HEARING

In March 2024, during a pretrial hearing, the trial court reviewed the parties' briefing on the issue for trial and proposed that the issue be framed as "whether the plaintiff was retaliated against based upon a whistleblower complaint in the process of assigning a new vehicle." VRP (Mar. 22, 2024) at 7. DLI expressed concern that this phrasing would expand the issue to include other issues regarding reassignment of the vehicle beyond the issue on remand. In response, Boespflug argued that DLI was seeking to narrow the issue to limit the evidence presented.

After hearing the parties' arguments, the trial court framed the issue as "whether the plaintiff was retaliated against based upon his whistleblower complaint in the process of assigning the plaintiff a new vehicle."[2] VRP (Mar. 22, 2024) at 13. The case then proceeded to a jury trial.

---

[2] DLI relies on this language in this current appeal.

D.    TRIAL

1.    Whistleblower Complaints

Boespflug testified about three instances that led to his whistleblower complaints while working under Ault.  First, Boespflug explained that in 2015, he was driving to Bonney Lake for an inspection when he saw an electrical van parked down the road.  Because his job required that he check for proper licensure and certifications, Boespflug approached the van and discovered Kraft Electric's electricians were working without a permit.  Boespflug subsequently issued four citations—two to Kraft Electric and two to the administrator who oversaw the electrical work.

Boespflug expected that Ault would approve the citations; however, Ault canceled the citations.  Boespflug knew that Ault previously worked with an owner of Kraft Electric, so Boespflug filed a whistleblower complaint after Ault "basically just ignored [the citations].  In fact, he didn't ignore them. . . . [H]e voided the citations."  VRP (Apr. 4, 2024) at 366.  Boespflug sent this whistleblower complaint to an assistant attorney general.

Boespflug also submitted a whistleblower complaint involving a mobile home service change for ERS Group.  One day, when Boespflug was not working, another inspector, Michael Friend, conducted an inspection and wrote one correction at the site.  When Boespflug returned to work, he noted two additional corrections for the site: the service was not bonded, which presented an electrocution hazard, and the service lacked additional breakers.  The owner of the ERS Group "complained very loudly," so "they took [the corrections] out of [Boespflug's] hands."  VRP (Apr. 4, 2024) at 377.

In September 2016, Boespflug filed a whistleblower complaint relating to ERS Group with a department liaison for the state auditor.  Boespflug alleged that "there was a serious and

dangerous situation . . . and [Boespflug] just wasn't getting much action" to correct the dangerous installation. VRP (Apr. 4, 2024) at 379. Boespflug alleged that Hurlbut, a lead electrical inspector, told Friend "to make this inspection go away" and that "Ault . . . and Hurlbut[] had decided to placate [the owner of ERS Group] by having his dangerous electrical installation approved." VRP (Apr. 8, 2024) at 421.

Boespflug submitted a third whistleblower complaint involving a sewage lift station. Boespflug had written corrections because the installation lacked a rigid steel conduit and a seal off, which was "a serious violation of the code." VRP (Apr. 4, 2024) at 382. Ault "was very unhappy" that Boespflug had written corrections because the chief electrical inspector "had looked over these electrical plans and approved them." VRP (Apr. 4, 2024) at 383. Boespflug explained that this was a violation of state law because "[a]s inspectors, . . . you're not allowed to aid, to look at, to take a look at their diagrams and tell them . . . whether or not these are going to meet code. . . . That's a horrible conflict of interest." VRP (Apr. 4, 2024) at 383. Accordingly, Boespflug contacted the state auditor with this complaint in December 2016.

Ault learned of Boespflug's whistleblower complaints when the complaints were investigated.

2.      Vehicle Reassignment

Vivian Montes, DLI's local vehicle coordinator, testified that she would initiate paperwork for a new vehicle upon receiving an email from the Department of Enterprise Services that a vehicle has met its mileage limit. Montes did not receive an email from Enterprise Services informing her that Boespflug's vehicle reached the mileage limit. Instead, Ault informed Montes

that Boespflug needed a new vehicle because it needed new snow tires, so Montes initiated the paperwork to order a new vehicle.

On January 11, 2017, Ault emailed Boespflug, instructing him to return his vehicle in exchange for a newer vehicle with newer tires. Boespflug explained that this type of vehicle "swap" had "[n]ever happened before." VRP (Apr. 4, 2024) at 371. However, Boespflug explained that "[b]ecause of the situation [he] had with Mr. Ault at the time, [he] felt complaining would do [him] more harm than any good." VRP (Apr. 4, 2024) at 371.

The newer vehicle was "much smaller" than Boespflug's previous vehicle. VRP (Apr. 8, 2024) at 412. Boespflug explained that electrical inspectors typically work from a stand in the passenger's seat, but it was more difficult to do so because the vehicle was smaller. Compared to the newer vehicle, Boespflug's previous vehicle was full-sized and sat higher off the ground, so "[i]t was much easier [to get] in and out of." VRP (Apr. 8, 2024) at 414. Boespflug also explained that it was much easier to work in the front seat of his previous vehicle. Despite finding the newer vehicle uncomfortable, Boespflug did not request an ergonomic evaluation nor inform the safety coordinator or Ault that he was uncomfortable in the newer vehicle.

Hurlbut previously drove Boespflug's new vehicle, but the model of the vehicle exacerbated his sciatica and back pain. After complaining to Ault, Hurlbut received an ergonomic evaluation and was issued a new vehicle.

Regarding the process for receiving an ergonomic evaluation, Boespflug presented testimony from Matson, who was a lead electrical inspector and compliance officer until 2017. Matson testified that, based on his understanding of DLI's general practice, ergonomic evaluations are part of the process of getting a new vehicle. Matson explained that the State would periodically

provide ergonomic evaluations to ensure inspectors fit in their vehicles. Matson also discussed instances when he received ergonomic evaluations before Motor Pool issued him a new vehicle. In response, DLI presented testimony from Ericksen that in 2017, inspectors did not automatically receive ergonomic evaluations, but they were available upon request.

E.    CR 50 MOTION AND VERDICT

On April 8, 2024, DLI filed a motion for judgment as a matter of law under CR 50(a). DLI argued that Boespflug did not present evidence of a causal link, he did not show that he was treated differently, and DLI's failure to provide an ergonomic assessment was justified by its policy.

After hearing arguments on the CR 50(a) motion, the trial court noted that the evidence was contested and reminded the parties that it was "looking at whether in plaintiff's case they have presented evidence that addresses their burden of proof as to the elements." VRP (Apr. 8, 2024) at 562. The trial court denied DLI's CR 50(a) motion.

At the conclusion of trial, the jury returned a verdict for Boespflug and awarded him $262,000 in damages. The parties subsequently stipulated attorney fees and costs.

DLI appeals.

ANALYSIS

DLI contends that the trial court erred by denying its motion for summary judgment because the trial court's denial was based on an impermissible expansion of the issue on remand from the court of appeals. DLI also argues that the trial court erred by denying its CR 50 motion for judgment as a matter of law. We disagree.

9

A.    DENIAL OF SUMMARY JUDGMENT

We review summary judgment rulings de novo. *Strauss v. Premera Blue Cross*, 194 Wn.2d 296, 300, 449 P.3d 640 (2019). But we only review trial court decisions as a matter of right under RAP 2.2. And "we do not review a trial court's denial of a summary judgment after a jury trial under RAP 2.2." *Leitner v. City of Tacoma*, 15 Wn. App. 2d 1, 18-19, 476 P.3d 618 (2020) ("'[A]n order denying summary judgment, based upon the presence of material, disputed facts, will not be reviewed when raised after a trial on the merits.'" (quoting *Johnson v. Rothstein*, 52 Wn. App. 303, 306, 759 P.2d 471 (1988))), *review denied*, 196 Wn.2d 1045 (2021). However, we may review the denial of summary judgment if the decision "turned solely on a substantive issue of law." *Id.* at 19.

DLI argues that the trial court erred by denying its motion for summary judgment because the trial court "impermissibly expanded the issue to include any action taken by [DLI] 'in the process of assigning a new vehicle,'" which is a substantive issue of law. Br. of Appellant at 17 (quoting CP at 431, 437). DLI's quoted language comes from the trial court's ruling during a pretrial hearing, not the summary judgment hearing.

The record does not support DLI's argument that the trial court's summary judgment ruling was based on an erroneous construction of the issue remanded by the court of appeals. As stated above, DLI's argument relies on language from a pretrial hearing, not the summary judgment hearing. Thus, DLI's argument that the trial court erroneously expanded the issue in its summary judgment ruling is unpersuasive.

Furthermore, Division I affirmed summary judgment in favor of DLI "except only the alleged act of retaliation involving the lack of an ergonomic evaluation for the selection of a

replacement vehicle, which presents genuine issues of material fact." *Boespflug* I, No. 83301-4-I, at 27. In reaching its decision that disputed facts preclude summary judgment, the trial court specifically identified that questions of material fact exist in the sole issue remanded by *Boespflug* I, such as whether the conduct was justified and whether improper motive was a substantial factor. Accordingly, the trial court's construction of the issue during the summary judgment hearing was consistent with *Boespflug* I.

Also, the trial court's denial of summary judgment was based on a determination that material facts were in dispute based on the holding in *Boespflug* I. The trial court ruled on summary judgment that

> there remain issues of material fact that preclude summary judgment dismissal of the remaining claim. Those issues include the standard practice and some of the statements the Court of Appeals opinion contains, whether the failure to conduct an ergonomic evaluation was justified, whether improper motive was not a substantial factor. There remain issues of fact as to those issues, and so the court is denying the motion for summary judgment at this time.

VRP (Jan. 11, 2024) at 31. Accordingly, the trial court explicitly stated that its denial of summary judgment was based on a finding that material facts were in dispute. Because the denial was based on a finding of disputed material facts and did not turn on a substantive issue of law, we decline to review the denial of summary judgment.

B.    DENIAL OF CR 50 MOTION

DLI next argues that the trial court erred in denying DLI's CR 50 motion for judgment as a matter of law because Boespflug "failed to prove that he was treated differently than others, that his whistleblower activities were the cause of his failure to receive an ergonomic evaluation, or

that [DLI]'s failure to provide one without request was improper or pretextual." Br. of Appellant at 30. DLI does not dispute that Boespflug was a whistleblower under the statute.

We review de novo a trial court's denial of a motion for judgment as a matter of law. *Mears v. Bethel Sch. Dist. No. 403*, 182 Wn. App. 919, 926, 332 P.3d 1077 (2014), *review denied*, 182 Wn.2d 1021 (2015). A CR 50 motion "'should be granted only when, after viewing the evidence in the light most favorable to the nonmoving party, there is no substantial evidence or reasonable inferences therefrom to support a verdict for the nonmoving party.'" *Mancini v. City of Tacoma,* 196 Wn.2d 864, 877, 479 P.3d 656 (2021) (quoting *H.B.H. v. State*, 192 Wn.2d 154, 162, 429 P.3d 484 (2018)). "'Substantial evidence is said to exist if it is sufficient to persuade a fair-minded, rational person of the truth of the declared premise.'" *Id.* (internal quotation marks omitted) (quoting *Delgado Guijosa v. Wal-Mart Stores, Inc*., 144 Wn.2d 907, 915, 32 P.3d 250 (2001)).

Here, Boespflug presented substantial evidence that his vehicle reassignment without an ergonomic evaluation was retaliatory. After Boespflug submitted whistleblower complaints, Ault informed Boespflug that he would receive a newer vehicle. Ault was aware of the whistleblower complaints, and he initiated the conversation with Montes that led to the decision to replace Boespflug's vehicle. Boespflug did not receive an ergonomic evaluation before he was issued the newer vehicle. However, Matson testified that based on his understanding of DLI's general practice, ergonomic evaluations are part of the process of getting a new vehicle.[3] And, although Hurlbut testified that he received an ergonomic evaluation after he had complained about

---

[3] Although DLI noted that Matson was a whistleblower as of 2016 such that he could not be considered a comparator under RCW 42.40.050(1)(b)(xv), Matson testified as to the general practice, not solely about his personal experience with ergonomic evaluations nor his treatment after his whistleblower activities in 2016.

discomfort in his vehicle, Hurlbut also explained that he received an ergonomic evaluation before Motor Pool issued him a different vehicle. Accordingly, a fair-minded rational person could find that Boespflug was treated differently than other employees. And Ault's knowledge of the whistleblower complaints and his involvement in contacting Montes to replace Boespflug's vehicle is sufficient to persuade a rational person that Boespflug's whistleblower activities caused the failure to provide an ergonomic evaluation.

Further, viewing the evidence in the light most favorable to Boespflug, a fair-minded rational person could find that DLI's reason for failing to provide an ergonomic evaluation was pretextual. Despite DLI's contention that under the policy, ergonomic evaluations were only available upon request, Matson testified that DLI's general practice was to provide ergonomic evaluations when assigning a new vehicle. Accordingly, viewing all facts and reasonable inferences in the light most favorable to Boespflug, he presented substantial evidence of retaliation when DLI reassigned his vehicle without conducting an ergonomic evaluation.

Although DLI argues that the failure to provide Boespflug with an ergonomic evaluation was based on DLI's policy of only providing ergonomic evaluations upon request, this argument relies on viewing the evidence in the light most favorable to DLI. When reviewing the denial of a CR 50 motion, we construe all facts and inferences in favor of the nonmoving party. Here, Boespflug presented substantial evidence to support a verdict for him. Accordingly, the trial court properly denied DLI's CR 50 motion.

C.    ATTORNEY FEES ON APPEAL

Boespflug requests attorney fees on appeal.

Under RAP 18.1(a), the prevailing party may recover reasonable attorney fees if applicable law grants the party the right to recover attorney fees.  Under RCW 49.60.030(2), "[a]ny person . . . injured by any act in violation of this chapter shall have a civil action . . . to recover the actual damages sustained by the person, . . . together with the cost of suit including reasonable attorneys' fees."  "If attorney fees are allowable at trial, the prevailing party may recover fees on appeal." *Aiken v. Aiken*, 187 Wn.2d 491, 506, 387 P.3d 680 (2017).

Here, the trial court entered a stipulated judgment on attorney fees under RCW 49.60.030 in favor of Boespflug.  Because Boespflug was entitled to attorney fees at the conclusion of trial and he is the prevailing party in this appeal, he is entitled to attorney fees on appeal.  Therefore, we grant Boespflug's request for attorney fees on appeal.

CONCLUSION

Because the trial court denied DLI's motion for summary judgment based on a finding that there were genuine issues of material fact related to the issue on remand, the denial of summary judgment did not turn solely on a substantive issue of law, and the issue on remand was determined by a trier of fact, the trial court's ruling on summary judgment is not reviewable.  Also, the trial court properly denied DLI's CR 50 motion because Boespflug presented substantial evidence that he was retaliated against when DLI failed to conduct an ergonomic evaluation prior to assigning him his new vehicle.  Accordingly, we affirm.

No. 59575-3-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Maxa, P.J.

Glasgow, J.