# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| KIMBERLY RITCHEY, | No. 53303-1-II |
| Appellant, | |
| v. | UNPUBLISHED OPINION |
| SOUND RECOVERY CENTERS, LLC, a Washington limited liability company, | |
| Respondent. | |

MAXA, J. – Kimberly Ritchey appeals various trial court rulings in her lawsuit against Sound Recovery Centers, LLC that resulted in a jury verdict in favor of Sound Recovery. The lawsuit arose from Ritchey's refusal to submit to a drug testing procedure that required employees to either allow direct observation of providing a urine sample or remove their clothing for a visual inspection before providing a urine sample. Ritchey alleged disability discrimination and wrongful discharge in violation of public policy.

We hold that the trial court did not err in (1) setting aside a default order entered against Sound Recovery, (2) granting partial summary judgment in favor of Sound Recovery on her disability discrimination claim, (3) deciding not to ask two questions submitted by the jury at the close of Ritchey's testimony, (4) giving a public policy jury instruction that defined intrusion on private affairs, and (5) denying Ritchey's motion for a new trial based on insufficiency of the evidence. Accordingly, we affirm the trial court's decision.

FACTS

*Background*

Ritchey is a licensed chemical dependency counselor. She had a history of drug and alcohol use, but she had been clean and sober for 15 years at the time of trial. Sound Recovery operated a number of drug and alcohol treatment facilities.

Ritchey worked for two years for Grace Recovery Center, which had a common owner with Sound Recovery. In 2015, she began working for Sound Recovery when the Grace Recovery Center closed and the two staffs were consolidated. Ritchey worked as a case manager for Sound Recovery, which provided intensive outpatient chemical dependency services. In that role, her work consisted of individual counseling, group counseling, treatment planning, and helping clients develop the skills necessary to maintain their recovery after treatment.

*New Ownership and Drug Testing Protocol*

In late 2015, Frank Cid became the owner of Sound Recovery. Cid instituted a new drug testing protocol for Sound Recovery employees. Under the protocol, employees would have a choice between two options: observed testing and unobserved testing. The first option (Option A) provided for "direct observation of the collection by an independent health professional of the same gender." Ex. at 12. The second option (Option B) provided for "provision of a sample, in private, after visual inspection by an independent healthcare professional of the same gender. Disposable, sanitary gowns are provided by the center." Ex. at 12.

In February 2016, Sound Recovery indicated that it would start testing employees under the new testing protocol. Ritchey refused to sign a consent form for testing and did not submit to testing under the policy. Sound Recovery asked Ritchey to leave the premises until she agreed to

submit to testing. Ritchey never returned to work at Sound Recovery. In March, she came back to pick up her belongings. She eventually applied for and accepted other jobs.

During this period, Ritchey believed that she had been terminated. She claimed that Sound Recovery did not allow her to use any paid time off. On the other hand, Cid testified that Ritchey had not been terminated and that she still was an employee who would be welcomed back as long as she agreed to abide by the drug testing policy. Sound Recovery continued to pay for Ritchey's health insurance benefits through May. It discontinued paying benefits only after determining that Ritchey was not going to return to work.

*Complaint and Default Order*

In April, Ritchey filed a lawsuit against Sound Recovery to recover damages for alleged disability discrimination under the Washington Law Against Discrimination (WLAD) (chapter 49.60 RCW), termination in violation of public policy, and wrongful withholding of wages. According to Ritchey's complaint, she suffered from a disability, which Ritchey had made known to Sound Recovery. She alleged that Sound Recovery refused to accommodate her disability after instituting the new drug testing protocol and suspended her without pay for her refusal to submit to that protocol.

Ritchey served Sound Recovery's registered agent with the summons and complaint on April 7. Sound Recovery did not file an answer to the complaint within 20 days of service. As a result, Ritchey filed a motion for default on April 28. The trial court entered an order of default on the same day.

On June 6, Sound Recovery filed a motion under CR 55(c)(1) to set aside the trial court's default order. In his supporting declaration, Cid attributed Sound Recovery's failure to answer the complaint to his own "error and oversight." Clerk's Papers (CP) at 18. He stated that the

registered agent had transmitted the complaint to him, and that he mistakenly believed that he had forwarded the complaint to Sound Recovery's attorney. Until he discovered his mistake on May 30, Cid believed that the process for contesting Ritchey's lawsuit was underway. Cid also pointed out that Sound Recovery's attorney and Ritchey's attorney had been in communication before service of the complaint, but Ritchey's attorney did not inform Sound Recovery's attorney of the filing of the lawsuit or the default motion.

The trial court granted Sound Recovery's motion to set aside the default order and awarded Ritchey her attorney fees and costs incurred in obtaining the default order and resisting the motion to set aside the order.

*Summary Judgment on Failure to Accommodate Claim*

Sound Recovery moved for summary judgment on all of Ritchey's claims. With respect to Ritchey's disability discrimination claim, Sound Recovery argued that Ritchey failed to provide medical evidence that she had the disability that she claimed – post-traumatic stress disorder (PTSD) – or that Sound Recovery had failed to accommodate any disability. Sound Recovery pointed out that Ritchey in mandatory witness disclosures had not identified any medical expert witness to testify regarding these issues.

The summary judgment record includes deposition testimony from Ritchey describing her PTSD as well as correspondence between Ritchey and Sound Recovery staff describing her condition. Ritchey also submitted a note "To Whom It May Concern" from Pat O'Connor, Ph.D., a psychologist, who stated that he had diagnosed her with "DSM V. 309.81 Chronic Post Traumatic Stress Disorder." CP at 192. The note stated, "This acknowledges disabling conditions that go beyond normal anxiety alone and verifies the justification for

4

accommodations.  Formal accommodations could include but are not limited to alternative-events (e.g. breaks, alternative formats, and activity substitution.)."  CP at 192.

Ritchey also submitted a declaration from Jaime Armenta, who worked for both Grace Recovery and Sound Recovery.  Armenta stated that while she was at Grace Recovery, she learned that Ritchey had PTSD.  Ritchey asked that she not be required to go on hikes with patients during the cold and rainy season, and Grace Recovery management agreed to that request.

The trial court granted partial summary judgment in favor of Sound Recovery, dismissing Ritchey's disability discrimination claim.

*Trial*

At trial, there was conflicting testimony about the visual inspection required under Option B specifically.  Ritchey testified that her understanding of Option B was that it required a visual inspection of her naked body.  Cid testified that Option B required employees to "derobe in their own private bathroom, come out in a gown, show us that they didn't have anything," and then urinate without direct observation.  Report of Proceedings (RP) at 303.

Cid also testified that 195 out of 197 Sound Recovery employees completed the new drug testing process.  He stated that to the best of his knowledge, there were no complaints about the process from those 195 employees.

*Jury Questions for Ritchey*

At the beginning of the trial, the trial court entered an order in limine precluding the parties from referencing Ritchey's PTSD or her disability discrimination claim.

Following Ritchey's testimony on redirect examination, a juror submitted the following written question: "Did your upper level management know the reason that you did not want to do

5

the UA, i.e., abuse, et cetera?" RP at 237. Both Sound Recovery's counsel and Ritchey's counsel expressed concern about this question because of the motion in limine prohibiting reference to Ritchey's PTSD. The court stated, "All right. I'm going to decline to ask the question for all of those reasons." RP at 242. Ritchey did not take exception to the court's ruling.

After Ritchey testified on rebuttal, a juror submitted the following written question: "Did Ms. Ritchey ever let anyone know, and if so, who, why the idea of visual testing was so upsetting to her?" RP at 384. After a lengthy discussion with counsel, the trial court declined to ask the question. The court stated, "I'm not convinced this actually goes to rebut any part of the defendant's case." RP at 400. In response, Ritchey made an offer of proof regarding her response to that question and follow up questions.

*Public Policy Jury Instruction*

The trial court gave the following instruction on public policy:

It is public policy that a person has the legal right or privilege to be free from deliberate intrusions into her seclusion in a manner that is highly offensive or objectionable to a reasonable person. *The intruder must have acted deliberately to achieve the result with the certain belief that the result would happen*.

CP at 361 (emphasis added). Ritchey objected on the ground that the final sentence was an impermissible comment on the evidence in light of the decision not to answer the two jury questions. The court overruled plaintiff's objection.

*Jury Verdict*

The jury returned a special verdict on the claim of wrongful termination in violation of public policy, finding that Sound Recovery did not actually or constructively discharge Ritchey or terminate her employment. The jury returned a verdict in favor of Ritchey on the claim of

6

wrongful withholding of wages, finding that Sound Recovery should have paid $715.18 for the accumulated vacation time when Ritchey left.

*Motion for a New Trial*

Following the verdict, Ritchey moved the court for a new trial under CR 59(a)(7) on her claim of wrongful termination in violation of public policy. Ritchey argued that there was insufficient evidence to support the jury's finding that she was not actually discharged, the trial court erred in declining to ask the juror's questions, and the court's public policy instruction contained a comment on the evidence. The trial court denied Ritchey's motion.

Ritchey appeals the trial court's orders granting partial summary judgment on the disability discrimination claim and denying her motion for a new trial on her wrongful discharge in violation of public policy claim.

ANALYSIS

A.    SETTING ASIDE DEFAULT ORDER

Ritchey argues that the trial court erred in setting aside the default order because Cid's conduct constituted inexcusable neglect, which necessarily precludes a finding of good cause under CR 55(c)(1). We disagree.

1.    Legal Principles

Under CR 12(a)(1), a defendant generally must file an answer within 20 days after service of the summons and complaint. If the defendant fails to answer or otherwise defend within 20 days, a plaintiff can move for default under CR 55(a)(1). Defendants are not entitled to notice of the motion if they have not appeared in the action. CR 55(a)(3). Once a default order has been entered, a plaintiff can obtain a default judgment under certain circumstances. CR 55(b).

A trial court may set aside a *default order* under CR 55(c)(1) "[f]or good cause shown and upon such terms as the court deems just." In addition, CR 55(c)(1) states that a court may set aside a *default judgment* in accordance with CR 60(b), which addresses the vacation of judgments. These standards are different. *Sellers v. Longview Orthopedic Assocs., PLLC*, 11 Wn. App. 2d 515, 519, 455 P.3d 166 (2019), *review denied*, 195 Wn.2d 1017 (2020).

The test for setting aside a default judgment is well settled:

> A party moving to vacate a default judgment must be prepared to show (1) that there is substantial evidence supporting a prima facie defense; (2) that the failure to timely appear and answer was due to mistake, inadvertence, surprise, or excusable neglect; (3) that the defendant acted with due diligence after notice of the default judgment; and (4) that the plaintiff will not suffer a substantial hardship if the default judgment is vacated.

*Little v. King*, 160 Wn.2d 696, 703-04, 161 P.3d 345 (2007); *see also VanderStoep v. Guthrie*, 200 Wn. App. 507, 517, 402 P.3d 883 (2017).

In addressing whether to set aside a default judgment, this court in *VanderStoep* identified three guiding principles: (1) default judgments are disfavored because the preference is to resolve cases on the merits, (2) deciding whether to set aside a default judgment is a matter of equity and the "primary concern is whether justice is being done," and (3) "[w]hat is just and equitable must be determined based on the specific facts of each case." 200 Wn. App. at 517-18. These same principles necessarily apply when evaluating a motion to set aside a default order. *Sellers*, 11 Wn. App. 2d at 520.

In *Sellers*, this court concluded that the test for setting aside a default order is less clear than the test for setting aside a default judgment. *Id.* The court affirmed the general rule that " '[t]o establish good cause under CR 55, a party *may* demonstrate excusable neglect and due diligence.' " *Id.* (quoting *In re Estate of Stevens*, 94 Wn. App. 20, 30, 971 P.2d 58 (1999)) (emphasis added). However, "a finding of excusable neglect is not always required for a trial

court to find good cause to set aside a default order." *Sellers*, 11 Wn. App. 2d at 523. Rather, excusable neglect and due diligence are established *factors* that can be considered by the trial court in determining what is just and equitable. *Id.* at 523-26; *see also Seek Systems, Inc. v. Lincoln Moving/Global Van Lines, Inc.*, 63 Wn. App. 266, 271-72, 818 P.2d 618 (1991) (stating that two factors "to be considered" in setting aside a default order are excusable neglect and due diligence).

The court in *Sellers* stated,

> We conclude that although excusable neglect often will be a key factor for a trial court to consider in determining whether good cause exists to set aside a default order under CR 55(c)(1), excusable neglect is not always required. The trial court in the exercise of its discretion and to fashion a fair and reasonable result may find good cause based on appropriate facts even if the default resulted from defense counsel's inexcusable neglect.

11 Wn. App. 2d at 525.

2.    Standard of Review

We review the trial court's decision to set aside a default order, including the determination regarding the existence of good cause, for abuse of discretion. *Sellers*, 11 Wn. App. 2d at 520-21. " 'The decision to vacate an order of default is addressed to the sound discretion of the trial judge, and we will not reverse that decision absent a showing that the trial judge abused her discretion.' " *Id.* (quoting *Brooks v. Univ. City, Inc.*, 154 Wn. App. 474, 479, 225 P.3d 489 (2010)). The trial court abuses its discretion if its decision was manifestly unreasonable or based on untenable grounds. *Ugolini v. Ugolini*, 11 Wn. App. 2d 443, 446, 453 P.3d 1027 (2019).

Whether a party's conduct amounts to excusable neglect and whether the party acted with due diligence in moving to set aside the default order also are reviewed for abuse of discretion. *Sellers*, 11 Wn. App. 2d at 521. " 'The trial court has broad discretion over the issue of

excusable neglect.' " *Sellers*, 11 Wn. App. 2d at 521 (quoting *VanderStoep*, 200 Wn. App. at 526). In addition, "we are less likely to find an abuse of discretion when a trial court sets aside a default order than when a trial court denies a motion to set aside a default order." *Sellers*, 11 Wn. App. 2d at 521.

   3. Trial Court Exercise of Discretion

  Ritchey argues that the trial court erred in setting aside the default order because Sound Recovery did not show excusable neglect. She analogizes this case to *TMT Bear Creek Shopping Center, Inc. v. Petco Animal Supplies, Inc*., where the court held that a breakdown in office procedures that prevented a complaint being forwarded to counsel was inexcusable neglect and did not justify vacation of a default judgment. 140 Wn. App. 191, 213, 165 P.3d 1271 (2007). She also cites to two cases where inexcusable neglect was found: *Johnson v. Cash Store*, 116 Wn. App. 833, 848-49, 68 P.3d 1099 (2003) (general counsel accepted service of process and then neglected to forward the complaint) and *Prest v. American Bankers Life Assurance Company*, 79 Wn. App. 93, 100, 900 P.2d 595 (1995) (general counsel had been reassigned to other duties and was out of town when complaint was received, resulting in file being "mislaid" and failure to forward in a timely fashion).

  However, all three cases on which Ritchey relies are default *judgment* cases. As noted above, a finding of excusable neglect is not always required for a trial court to find good cause to set aside a default *order*. *Sellers*, 11 Wn. App. 2d at 523, 525. Instead, "good cause" under CR 55(c)(1) "must be a flexible concept that involves the trial court's exercise of discretion based on the particular facts of each case." *Id.* at 525.

  Here, Cid's uncontroverted testimony established that his error was a mistake and was not willful. Cid testified that he never sought "to evade the process which had been served on

Sound Recovery" and it had always been his intention "to contest the allegations made by [Ritchey.]" CP at 18.

The record also reflects that Sound Recovery acted with due diligence upon discovering Cid's error. Cid discovered his mistake on May 30, and the motion to set aside the default order was filed on June 6 – after Ritchey's attorney did not respond to a request to vacate the order.

In addition, the record reflects that the attorneys for Sound Recovery and Ritchey had been in communication and Ritchey's attorney did not give any notice that the complaint was being filed and served. Although Ritchey's attorney was not legally required to notify opposing counsel that a complaint was being filed, the failure to do so is a factor the trial court may consider in attempting to determine an equitable solution.

The trial court had broad discretion in ruling on Sound Recovery's motion to set aside the default order, including the factors that bear on good cause. *Sellers*, 11 Wn. App. 2d at 520-21, 526 ("[B]ecause a trial court must determine what is just and equitable, it is not inappropriate for a court to consider prejudice to the plaintiff."). As a "matter of equity" and "whether justice is being done," Sound Recovery's one-time mistake, due diligence, and pretrial communications with Ritchey are factors that would have been appropriate for the trial court to take into consideration in exercising its discretion. *Id.* at 520.

We hold that the trial court did not abuse its discretion in finding good cause to set aside the default order.

B.    SUMMARY JUDGMENT REGARDING DISABILITY DISCRIMINATION CLAIM

Ritchey argues that the trial court erred in granting summary judgment in favor of Sound Recovery on her claim for disability discrimination – the failure to reasonably accommodate her PTSD by making adjustments to the drug testing system. Sound Recovery argues that Ritchey

11

failed to present a prima facie case because she failed to produce sufficient medical expert testimony. We agree with Sound Recovery.

1.     Legal Principles

The WLAD prohibits employers from discriminating against any person because of "the presence of any sensory, mental, or physical disability." RCW 49.60.180(3). An employee has a cause of action when the employer does not reasonably accommodate the employee's disability. *Gamble v. City of Seattle*, 6 Wn. App. 2d 883, 888, 431 P.3d 1091 (2018), *review denied*, 193 Wn.2d 1006 (2019). The burden is on the employee – here, Ritchey – to show that (1) she suffered from a disability, (2) she was qualified to do the job at issue, (3) she gave her employer notice of the disability, and (4) the employer failed to reasonably accommodate that disability. *Mackey v. Home Depot USA, Inc.*, 12 Wn. App. 2d 557, 586, 459 P.3d 371, *review denied*, 195 Wn.2d 1031 (2020).

The WLAD defines "disability" as:

(a) . . . the presence of a sensory, mental, or physical impairment that:

(i) Is medically cognizable or diagnosable; or
(ii) Exists as a record or history; or
(iii) Is perceived to exist whether or not it exists in fact.

(b) A disability exists whether it is temporary or permanent, common or uncommon, mitigated or unmitigated, or whether or not it limits the ability to work generally or work at a particular job or whether or not it limits any other activity within the scope of this chapter.

RCW 49.60.040(7).[1]

---

[1] RCW 49.60.040(7) has been amended since the events of this case transpired. Because these amendments are not material to this case, we do not include the word "former" before RCW 49.60.040(7).

Expert medical testimony is required to establish that an impairment is medically cognizable or diagnosable. *Phillips v. City of Seattle*, 111 Wn.2d 903, 909, 766 P.2d 1099 (1989); *Simmerman v. U-Haul Co. of Inland Nw.*, 57 Wn. App. 682, 686-87, 789 P.2d 763 (1990). Whether a disability is a record or history depends upon medical documentation. *Phillips*, 111 Wn.2d at 909. Whether a disability is perceived to exist depends upon the employer's perception, not the employee's perception. *Fischer-McReynolds v. Quasim*, 101 Wn. App. 801, 810, 6 P.3d 30 (2000).

A plaintiff alleging the failure to accommodate a disability "must provide competent evidence establishing a nexus between the disability and the need for accommodation." *Riehl v. Foodmaker, Inc.*, 152 Wn.2d 138, 147, 94 P.3d 930 (2004), *abrogated in part on other grounds by Mikkelsen v. Pub. Util. Dist. No. 1 of Kittitas County*, 189 Wn.2d 516, 404 P.3d 464 (2017).

> Competent evidence establishing a nexus between a disability and the need for accommodation will vary depending on how obvious or subtle the symptoms of the disability are. *Medical expert testimony may or may not be required depending on the obviousness of the medical need for accommodation in the sound discretion of the court*. Where the disability and need for accommodation is obvious, such as a broken leg, the medical necessity burden will be met upon notice to the employer, and the inquiry will not be if accommodation is needed, but rather what kind of accommodation is needed. *However, in the case of depression or PTSD, a doctor's note may be necessary to satisfy the plaintiff's burden to show some accommodation is medically necessary.*

*Id.* at 148 (emphasis added).

2.    Standard of Review

We review a trial court's decision on a summary judgment motion de novo. *Zonnebloem, LLC v. Blue Bay Holdings, LLC*, 200 Wn. App. 178, 182, 401 P.3d 468 (2017). Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.*; CR 56(c). A genuine issue of material fact exists if reasonable minds could disagree on the conclusion of a factual issue. *Zonnebloem*, 200 Wn.

13

App. at 182-83. We view all facts and reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. *Id*. at 182.

The moving party bears the initial burden of proving that there is no genuine issue of material fact. *Id*. at 183. Once a moving defendant shows that there is an absence of evidence to support the plaintiff's case, the burden shifts to the plaintiff to present specific facts that rebut the defendant's contentions and show a genuine issue of material fact. *Id*.

Although claims arising under the WLAD often are inappropriate for resolution at summary judgment we will affirm the grant of summary judgment if the plaintiff fails to raise a genuine issue of fact on a prima facie element. *Gamble*, 6 Wn. App. 2d at 888.

3. No Medical Evidence of Nexus

Assuming without deciding that Ritchey provided sufficient evidence regarding the existence of her disability, we conclude that Ritchey failed to provide the requisite medical evidence of a nexus between the disability and the need for accommodation.

Here, there was no medical confirmation in the record that Ritchey's PTSD required further accommodation with respect to Sound Recovery's drug testing policy. Dr. O'Connor's note – the sole piece of medical evidence in the summary judgment record – elaborated on Ritchey's need for accommodation, but only with respect to "cold situations without a way of escape" because it "substantially limit[ed] [Ritchey's] ability to regulate her anxiety." CP at 192. Therefore, the need to accommodate her PTSD relative to the new testing protocol was not obvious and required greater documentation to survive summary judgment. *See Riehl*, 152 Wn.2d at 147-48.

Ritchey suggests that her communications with Sound Recovery personnel suffice to create a genuine issue of fact as to whether an accommodation was required. But the only

previous accommodation was that Ritchey not be required to go on hikes with patients during the cold and rainy season. And neither Ritchey's testimony nor her communications with Sound Recovery staff constituted medical evidence or showed why an accommodation regarding the drug testing system would be medically necessarily.

We conclude that Ritchey failed to meet her burden to provide a nexus between her alleged disability, PTSD, and a need for accommodation regarding the drug testing system. Accordingly, we hold that the trial court did not err in granting summary judgment on Ritchey's disability discrimination claim.

## C.    DECLINING TO ASK JUROR QUESTIONS

Ritchey argues that the trial court erred in declining to ask two juror questions submitted pursuant to CR 43(k) at the close of her testimony and her rebuttal testimony. We disagree.

CR 43(k) states that the trial court "shall permit jurors to submit to the court written questions directed to witnesses." Counsel may object to asking jurors' questions. CR 43(k). And "[t]he court may refuse on its own motion to allow a particular question from a juror to a witness." CR 43(k).

The language of CR 43(k) indicates that the trial court has discretion whether to ask questions submitted by jurors. In addition, we generally review a trial court's exclusion of evidence for an abuse of discretion standard. *Lock v. Am. Family Ins. Co.*, 12 Wn. App. 2d 905, 919, 460 P.3d 683 (2020). Therefore, we review the trial court's decision not to ask the juror questions for an abuse of discretion.

Regarding the first juror question, Ritchey did not object to the trial court's decision not to ask the question. In the absence of a proper objection, Ritchey failed to preserve the error for our review. *See Frantom v. State*, 12 Wn. App. 2d 953, 966, 460 P.3d 1100 (2020). In any

event, the trial court did not abuse its discretion in declining to ask the question because it may have violated the court's order in limine regarding Ritchey's alleged PTSD.

The second juror question also risked referencing Ritchey's alleged PTSD. In addition, the trial court ruled that the question did not relate to Ritchey's rebuttal testimony. We conclude that the trial court did not abuse its discretion in so ruling.

We hold that the trial court did not err in declining to ask the two juror questions.

D.      PUBLIC POLICY JURY INSTRUCTION

Ritchey argues that the trial court erred in giving the public policy jury instruction. Ritchey concedes that the instruction accurately stated the law, but she claims that the instruction was an impermissible comment on the evidence.

However, Ritchey presents no meaningful argument on this issue. She states that the instruction unnecessarily highlighted the element of intent. But she does not explain how. And she presents no further argument regarding the instruction. Failure to provide argument and citation to authority in support of an assignment of error precludes appellate consideration. RAP 10.3(a)(6); *Billings v. Town of Steilacoom*, 2 Wn. App. 2d 1, 21, 33, 408 P.3d 1123 (2017).

Even if we were to address the issue, Ritchey fails to point to anything in the record to indicate that the public policy instruction conveyed the trial court's personal attitudes towards the merits of her case or allowed the jury to infer what the court personally believed of the evidence in question. *See In re Det. of L.T.S.*, 197 Wn. App. 230, 235, 389 P.3d 660 (2016) (holding that an improper comment on the evidence conveys a judge's personal attitudes toward the merits of the case or allows the jury to infer what the judge personally believed or disbelieved of the particular evidence in question). And there is nothing in the record to even suggest as much. Therefore, we reject Ritchey's argument.

E.       MOTION FOR A NEW TRIAL – SUFFICIENCY OF EVIDENCE

Ritchey argues that the trial court erred in denying her motion for a new trial on her wrongful discharge in violation of public policy claim because sufficient evidence did not support the jury's verdicts that she was not actually or constructively discharged. We disagree.

1.    Legal Principles

a.    Motion for New Trial

Under CR 59(a)(7), trial courts may order a new trial after a jury has returned its verdict where "there is no evidence or reasonable inference from the evidence to justify the verdict." Therefore, on appeal from the denial of a motion for a new trial we must determine whether sufficient evidence supports the verdict. *Millies v. LandAmerica Transnation*, 185 Wn.2d 302, 316, 372 P.3d 111 (2016). Evidence is sufficient to support the verdict where it is substantial. *Mears v. Bethel Sch. Dist. No. 403*, 182 Wn. App. 919, 927, 332 P.3d 1077 (2014). Substantial evidence is the " 'quantum of evidence sufficient to persuade a rational fair-minded person the premise is true.' " *Yorkston v. Whatcom County*, 11 Wn. App. 2d 815, 831, 461 P.3d 392, *review denied*, 194 Wn.2d 1020 (2020) (quoting *Sunnyside Valley Irrig. Dist. v. Dickie*, 149 Wn.2d 873, 879, 73 P.3d 369 (2003)).

We must view the evidence in favor of the nonmoving party – here, Sound Recovery. *Mears*, 182 Wn. App. at 927. In addition, we do not review the jury's credibility determinations. *Duc Tan v. Le*, 177 Wn.2d 649, 672, 300 P.3d 356 (2013). We review for abuse of discretion the trial court's denial of a motion for a new trial under CR 59(a)(7). *Millies*, 185 Wn.2d at 316.

b.    Wrongful Discharge in Violation of Public Policy

As a narrow exception to the employment at will doctrine, an employer cannot terminate an employee for " 'reasons that contravene a clear mandate of public policy.' " *Martin v.*

*Gonzaga Univ.*, 191 Wn.2d 712, 723, 425 P.3d 837 (2018) (quoting *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 232, 685 P.2d 1081 (1984)). Violation of this rule gives rise to a claim for wrongful discharge in violation of public policy. *Martin*, 191 Wn.2d at 722-23. Such a claim can arise when an employee is terminated for exercising a legal right or privilege. *Id.* at 723. Ritchey claimed that she was terminated for objecting to an intrusion into her right of privacy, a legal right or privilege.

A wrongful discharge in violation of public policy claim requires that the employee be discharged, either expressly or constructively. *Peiffer v. Pro-Cut Concrete Cutting & Breaking Inc.*, 6 Wn. App. 2d 803, 829, 431 P.3d 1018 (2018), *review denied*, 193 Wn.2d 1006 (2019). The jury found in separate special verdicts that Sound Recovery neither actually nor constructively discharged Ritchey. The issue here is whether substantial evidence supported those verdicts.

    2.    Actual Discharge

Ritchey argues that substantial evidence does not support the jury's verdict that Sound Recovery did not actually discharge her. She claims that Sound Recovery terminated her employment when it ordered Ritchey to leave the premises, refused to allow her to work until she took the drug test, and denied her request to use accrued leave. Sound Recovery contends that it never actually discharged Ritchey, and instead she essentially discharged herself when she refused to comply with the drug test requirement. We conclude that substantial evidence supports the jury's verdict.

There is no direct evidence that Sound Recovery actually discharged Ritchey from employment. Ritchey does not claim that Sound Recovery expressly terminated her. Instead, she argues that Sound Recover clearly terminated her employment through its actions.

But there was evidence showing that Ritchey could have continued in her employment. Cid testified that Ritchey had not been terminated and that she remained an employee who could return to work as long as she agreed to abide by the drug testing policy. In fact, Sound Recovery continued to pay for Ritchey's health insurance benefits through May. It discontinued paying benefits only after determining that Ritchey was not going to return to work.

Ritchey urges us to determine as a matter of law that actual termination occurs when the employer refuses to allow the employee to perform duties in the workplace and no longer pays the employee. But such a rule would be inappropriate here, where Ritchey's actions contributed to her inability to work and cessation of her pay.

Viewing the evidence in the light most favorable to Sound Recovery, we conclude that there is substantial evidence that Sound Recovery did not actually discharge Ritchey. Therefore, the court should affirm the jury's verdict regarding actual discharge.

3.   Constructive Discharge

Ritchey argues that substantial evidence does not support the jury's verdict that Sound Recovery did not constructively discharge her. She claims that Sound Recovery's new drug testing system made working conditions so intolerable that a reasonable person in her position would have felt compelled to resign. We conclude that substantial evidence supports the jury's finding of no constructive discharge.

The elements of a claim of constructive discharge are that (1) the employer deliberately made working conditions intolerable, (2) a reasonable person in the employee's position would be forced to resign, (3) the employee resigned because of the intolerable condition and not for any other reason, and (4) the employee suffered damages as a result of being forced to resign. *Peiffer*, 6 Wn. App. 2d at 829. The trial court so instructed the jury. Whether working

19

conditions have become intolerable generally is a question of fact for the jury. 16A DAVID K. DEWOLF and KELLER W. ALLEN, WASHINGTON PRACTICE TORT LAW AND PRACTICE § 24:2 (4th ed. 2013).

Ritchey argues that Sound Recovery's new drug testing system made work conditions intolerable because she was required either to allow another person to view her genital area during urination (Option A) or submit to a strip search (Option B). She claims that both options constitute an intolerable invasion of privacy and are objectionable to a reasonable person. She apparently urges this court to decide these issues as a matter of law.

We recognize that Sound Recovery's drug testing system was intrusive and did invade the privacy of Sound Recovery's employees to some extent. However, we decline to decide the constructive discharge issue as a matter of law. Whether the drug testing system made working conditions intolerable and would have forced a reasonable person in Ritchey's position to resign necessarily involves subjective determinations. The jury was in the best position to make these determinations based on the evidence presented at trial. This evidence included Cid's testimony that 195 out of 197 Sound Recovery employees completed the new drug testing process without complaint.

Viewing the evidence in the light most favorable to Sound Recovery, we conclude that there is substantial evidence that Sound Recovery did not constructively discharge Ritchey. Therefore, we affirm the jury's verdict regarding constructive discharge.

4. Summary

Actual or constructive termination is the threshold requirement for a claim for wrongful discharge in violation of public policy. Because substantial evidence supported the jury's

verdicts regarding actual termination and constructive termination, we need not address whether any such discharge would have violated public policy under the facts of this case.

There was no basis for granting Ritchey a new trial under CR 59(a) (7). Therefore, we hold that the trial court did not err in denying her motion for a new trial.

CONCLUSION

We affirm the trial court's grant of partial summary judgment in favor of Sound Recovery on Ritchey's disability discrimination claim and denial of Ritchey's motion for a new trial on her wrongful discharge in violation of public policy claim.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, J.


We concur:

_____
LEE, C.J.

_____
GLASGOW, J.